**RUSSELL vs. FAVIER ET AL.**

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where goods or property are *taken feloniously* no title is acquired by the felon, and he can convey none ; but if the vendor delivers possession with the intent not only that the *possession* but the *property shall pass*, a *bona fide* purchaser from the fraudulent vendee will hold the property. His equity is greater than that of the original owner.

But where the owner of a slave puts her on hire, with *no intention of passing the right of* property to the bailee or lessee, the subsequent bad faith of the lessee in selling the slave as his own, does not deprive the true owner of his property, or give title to an innocent purchaser.

This is a petitory action. The plaintiff alleges he is the owner of a female slave named Lydia, worth $800, and which he shows to be in possession of the defendant, who refuses to deliver her up. He prays judgment for said slave and her hire at $150 per annum.

The defendant, widow Favier, pleaded the general issue and set up several other matters in defence. She further averred she purchased the slave in contest from one Isaac Veill of Natchez, Mississippi, by notarial act passed in this city the 12th May, 1838, and paid $530 in cash to her said vendor. She prays that he be called in warranty to defend this suit, and that she have judgment over against him for the price, and $400 for hire, &c., in case she is evicted.

The warrantor pleaded the general issue and averred that he was the true and legal owner of the slave Lydia when he sold her to the defendant, having purchased her at public auction in Natchez, Mississippi, where slaves are considered as moveable property and title passes by delivery.

Upon these pleadings and issues the cause was tried.

The evidence fully established the fact that the plaintiff was the original owner of the slave and that he brought her with others from Virginia to Vicksburg in 1836, where they were hired out. One John D. Bruner hired this girl from Henderson, the agent of plaintiff, and in April, 1838, at Natchez, had her sold at public auction as his property and Isaac Veill be-

came the purchaser, who brought her to the city of New Orleans and sold her to the defendant.

The evidence establishing title to this slave in the plaintiff, there was judgment in his favor for her, with $6 per month damages from judicial demand until possession is delivered; and that the defendant have judgment against Veill, her warrantor, for $530 and like damages.

*Peyton*, for the plaintiff, urged the following points in support of the judgment:

1. This is a bailment, or contract of hire in daily use, in which the bailee is bound to return the article or slave, according to contract; 2 Kent's Com., 585-6; Story on Bailment, 261-2; Pothier Louage, ch. 1, sec. 3; showing the difference between a *sale* and a hiring.

2. The bailor or bailee may maintain an action; 2. Bl. Com. 453. The bailee cannot dispose of property so as to divest the true owner of his right. In support of this position see two cases in Tenn. Rep.; one Stump vs. Roberts, Cook's Rep., 350. It was a case of hiring or loaning a horse, which was sold and the owner recovered him. See Holman's Digest, 55, title bailment; also, Yerger's Rep., 301, Haley vs. Bowman, which is the same in principle and refers to 1 Chitty's Pleadings, 120-1; 1 Washington's Rep., 12, &c.; even an action of *detinue will lie* after the property is out of defendant's possession; Devereux's N. C. Rep., vol. 1, 466. See Story on Bailments, 261-2, as to the rights and duties of the hirer.

3. The cases in 8 Cowan, 340; 14 Wendell, 32, and 22 idem, 308, all go on the principle that the owner had by an *absolute sale* agreed to part with *both possession and property*, and thereby agreed to trust the purchaser and enable him to impose upon others. In this case the plaintiff did no such thing. Veill was at least very negligent in not requiring the production of a title by Bruner, and his hasty removal of the slave from the State of Mississippi looked suspicious; and as he is to pay the judgment against the defendant, justice is done on all sides.

*Hoa*, for the defendant, insisted that she held the slaves in question by a good title and should be maintained in her possession as the true owner.

*Benjamin*, for the warrantor contended:

1. The evidence shows that in Mississippi slaves are moveables: that the plaintiff delivered *possession* of the slave sued for, to the vendor of the warrantor; that Veill, the warrantor, bought the slave at public auction.

2. A purchaser of *moveable* effects at public auction, who buys *bonâ fide* from an individual to whom the real owner has intrusted the *possession*, acquires a good title even though the owner had given the *possession* without authority to sell—or in other words, *possession* is such proof of *title* to moveables as to enable the possessor to convey a good title to *bonâ fide* purchasers in the ordinary course of business, unless the *possession* has been *feloniously* obtained; 8 Cowen, 240; Andrew vs. Dieterich, 14 Wendell, 32; Hoffman vs. Carow, 22 Wendell, 308 and seq.

3. The distinction is this: if possession be obtained *feloniously*, as by *theft*, the possessor can pass no title; but if obtained *fraudulently*, it suffices to enable him to pass title to third persons. See cases above cited.

4. The judge below certainly erred in condemning the warrantor to pay for the hire of the slave whilst in possession of Mrs. Favier; she has enjoyed the services, and if it be decided that she is not entitled to them, she must pay their value: the warrantor has enjoyed the price, and cannot be bound to pay more than the interest thereon.

*Garland, J.* delivered the opinion of the court.

The plaintiff claims a negro girl as his property, which he alleges is in the possession of the defendant Madame Favier, who sets up title to her. The latter denies the plaintiff has any right to the slave, and further says she purchased her in good faith for a valuable consideration of Veill, who warranted the

title, and he was cited to defend it. He answers, that he purchased the slave for a valuable consideration and in good faith; he denies defendant's title, and says, if he ever had any, it has been divested.

The evidence establishes conclusively, that the girl Lydia was born on the plantation of the plaintiff in the State of Virginia, of a female slave that belonged to him. In the latter part of the year 1836, he brought this girl with a number of other slaves to Vicksburg, in the State of Mississippi, for the purpose of hiring them out. He refused to sell them, though offered a high price. The slaves were hired out at the commencement of each year, and the plaintiff annually visited the State for the purpose of receiving their hire. He had an agent in Vicksburg, who attended to his business in his absence. In January, 1838, the girl was hired to one J. D. Bruner, who in the month of April following took her to Natchez, and after offering her for sale privately at different times, finally had her sold at auction, when Veill became the purchaser, brought her to New Orleans, and sold her to the defendant, with a full guaranty, without notice of any fraud.

The counsel for Veill, the warrantor, rests his defence principally on the ground, that slaves are, by the law of Mississippi, moveable property, that possession is prima facie evidence of title, and as it is proved that Bruner came lawfully into the possession of the slave by hiring her, his subsequent bad faith and fraudulent conduct towards the real owner, ought not to affect the property in the hands of an innocent purchaser for a valuable consideration. He has called our attention to the distinction between the felonious and fraudulent acquisition of property, and the difference it makes in the rights of a third person, and from the earnestness with which he pressed on us the opinion of one of the dissenting members of the Court of Errors in New York, in the case of Hoffman vs. Carow, 22 Wendell, 285; it would seem he was desirous of abolishing that distinction.

Upon a full examination of all the cases and principles

settled in the United States and other countries, we think the correct doctrine has been laid down by chief justice Savage, in the case of Andrew vs. Dieterich, 14 Wendell, 34. He says, if goods are taken *feloniously*, no title is acquired by the felon, and he can convey none to a *bona fide* purchaser ; but where the vendor has delivered possession of his goods, with the intent not only that the *possession*, but the *property* shall pass, a *bona fide* purchaser from a fraudulent vendee, shall hold the goods in preference to the original owner. The reason is, that the original owner, by putting his goods in the hands of the fraudulent vendee, has reposed confidence in him, and has enabled him to commit a fraud ; therefore the equity of the original owner is not equal to that of the person who has *bona fide* parted with his money or property in the purchase of such goods. The original vendor, by his imprudence, enabled the fraudulent vendee to defraud some one, and should himself be the sufferer rather than a third person, who must otherwise be defrauded. 8 Cowen, 238; 5 T. R. 175; 13 Wendell, 570.

In this case it is evident, that Russell had no intention of passing the *right of property* in the slave in controversy to Bruner, by hiring her to him. He only intended to give a temporary possession, and the subsequent bad faith of the lessee does not deprive the owner of his right of property.

The La. Code, Art. 3475, says, that a possession of a moveable property for three years, which had been bought at auction or of a person in the habit of selling such things, will enable the possessor to hold it against the real owner, unless he return the price the possessor gave for it, but this rule, we apprehend, is not applicable to slaves.

The case of Barfield vs. Hewlett, 4 La. Rep., 120, is very similar to this. In that case the plaintiff established his title ; it was admitted the defendant had purchased the slaves at auction, and took Harraldson's bill of sale. The slaves had been delivered to Harraldson in Tennessee, to be taken to Attakapas or Opelousas, with written instructions to hire them out. Harraldson brought them to New Orleans, where he publicly

*Margin notes:*

EASTERN DIS. June, 1841.

RUSSELL vs. FATIER ET AL.

Where goods or property are taken *feloniously*, no title is acquired by the felon, and he can convey none ; but if the vendor delivers possession with the intent not only that the *possession*, but the *property* shall pass, a *bona fide* purchaser from the fraudulent vendee will hold the property. His equity is greater than that of the original owner.

But where the owner of a slave puts her on hire, with *no intention* of passing the *right* of property to the bailee or lessee, the subsequent bad faith of the lessee in selling the slave as his own, does not deprive the true owner of his property, or give title to an innocent purchaser.

EASTERN DIS. offered them for sale, and finally put them up at auction.   The
June, 1841.   court said, it is clear the defendant acquired no title, his vendor

GUERIN'S HEIRS having none himself, nor authority to convey any.
vs.
BAGNERIES.      The judgment of the District Court is therefore affirmed so
far as it relates to the plaintiff Russell and the defendant Ma-
dame Favier; but in relation.to the portion of it between the
defendant and Veill, her warrantor, it is ordered that said judg-
ment be amended so, that she recover of him five hundred and
thirty dollars, with interest at the rate of five per centum per
annum, from the 2d of February, in the year 1839, until paid,
and the costs of this suit and the costs of this appeal.