COMMERCIAL NATIONAL BANK *vs.* EMERY BEMIS & others.

Suffolk.   December 5, 1899. — October 19, 1900.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

*Warehouse Receipt — Pledge — Estoppel.*

The owner of goods stored in bond who pledges the warehouse receipt therefor as
security for an accommodation note given by the pledgee, is not estopped from
asserting his title to the goods as against a third person who, acting in good faith
and without notice, takes such warehouse receipt as collateral security for the
indebtedness of the pledgee.

BILL IN EQUITY, filed March 15, 1895, to compel the defend-
ant Bemis to execute and deliver to the plaintiff a "withdrawal
entry" and such other papers as may be required under the laws
of the United States to enable the plaintiff to pay the duties
upon certain tobacco stored in bond and to withdraw the same
from bond.

The case was heard in this court before *Holmes*, J., who re-
ported it for the consideration of the full court.  The material
facts appear in the opinion.

*R. Stone*, for the plaintiff.

*W. B. French*, for the defendant Bemis.

HAMMOND, J.   This case was heard by the present Chief Jus-
tice of this court, and is before us upon a report made by him.
At the hearing he ruled that upon the facts "the warehouse re-
ceipt had no greater effect than the possession of the tobacco
would have had; that Bemis was not estopped from asserting
his title to the tobacco; and that the plaintiff took no greater
title than Bixby and Company had;" and the question pre-
sented by the report is whether these rulings were correct.

The material facts upon which these rulings were made may
be stated as follows.   At the request and for the accommodation
of the defendant Bemis, then a tobacco merchant doing business
alone under the name of Emery Bemis and Company, Bixby and
Company, on the eighth day of September, 1893, made two
negotiable promissory notes, and on the twenty-seventh of the

following November three other similar notes. On the last mentioned day, Bemis, having in a government warehouse a large quantity of tobacco which had been imported by him and upon which the duty had not been paid, in compliance with the request of Bixby and Company for security directed the wharfinger of the warehouse to hold one hundred and twenty-three bales of this tobacco, subject to the order of Bixby and Company, and sent to him a receipt for the same; and on the same day Bemis delivered to Bixby and Company a new warehouse receipt, wherein it was stated that the tobacco had been received on storage " for account " of Bixby and Company. As between them and Bemis this transaction was only a pledge to secure them for their accommodation notes.

Bixby and Company paid the notes of September at their maturity. Shortly before the maturity of the first of the November notes, and on or about the twentieth day of February, 1894, they notified Bemis that they would be unable to pay the remaining notes, and proposed to him that the plaintiff bank should take their place, to which proposition Bemis assented.

Shortly after this Bixby and Company obtained a loan from the plaintiff for $3,500, on the security of the tobacco, exhibiting and indorsing to it the warehouse receipt, and at the plaintiff's request taking out a new receipt in its name. This receipt stated that the tobacco was received on storage " for account of " the plaintiff. The note given by Bixby and Company for this loan was an ordinary negotiable note payable on demand to the order of the plaintiff, and it contained a statement that the " warehouse receipt " for the tobacco had been deposited with the plaintiff " as collateral security for payment of this or any other liability or liabilities of ours to said bank due or to become due, or that may be hereafter contracted." Each of the warehouse receipts contained a statement that " negotiable receipts must accompany orders, that deliveries be indorsed thereon, and when goods are transferred, surrender of the original receipt is required "; and written across the face of each were the words " Not negotiable."

At the time this loan was made Bixby and Company were indebted to the plaintiff in the sum of $7,156.28, upon notes previously given, and during the following months of March and

April the plaintiff made to them three other loans of $1,500 each.   The plaintiff acted in good faith and without notice.

On March 10, 1894, Bemis, wishing to remove some of the tobacco, applied to Bixby for an order on the warehouse, and Bixby and Company then for the first time informed him that the plaintiff had taken their place, and gave Bemis an order in the following form :

"Boston, Mar. 10, 1894.

"Commercial Nat. Bank.   Please deliver to Emery Bemis trustee Two Bales Leaf Tobacco ♯336 & ♯337 stored at Long Wharf, upon payment of One Hundred Dollars, $100, — and oblige

"Thos. E. Bixby & Co.

per C. L. de Veer, Atty."

This was the first intimation Bemis had that Bixby and Company had made any arrangement with the bank, and he never knew until shortly before the bringing of the plaintiff's bill in March, 1895, that Bixby and Company had pledged the tobacco to the bank as security for their debt.

Bemis presented this order to the bank.

Immediately upon the receipt of said order of March 10, 1894, by the plaintiff bank, it released two bales of the tobacco, and received from Bemis $100, which was credited by the bank on Bixby's note.

Similar orders were given by Bixby and Company to Bemis from time to time, on which payments were made, and tobacco released, as requested in the orders; to wit, on March 12 a payment of $200 ; on March 17 a payment of $75 ; on March 19 a payment of $75 ; and on April 16 a payment of $150.

Subsequently other payments were made for differing amounts. The number of such orders was thirty-three, and the last in date was January 2, 1895.   Bemis paid $4,785 to the bank upon these orders.

The amount of the accommodation notes given by Bixby and Company to Bemis was, on their face, $6,268.86.   They were all paid by Bixby and Company.   Bemis admitted that he owed Bixby and Company $636.32, but the plaintiff claims that it is a much larger sum.

The plaintiff does not contend that the case is within the pro-

visions of Pub. Sts. c. 71, concerning agents, consignees, and factors, or that this was a public warehouse within the meaning of Pub. Sts. c. 72, but it insists that upon the facts stated Bemis is estopped to deny its right to hold the tobacco for the amount due it from Bixby and Company.

We think that the decision of this case rests upon the application of well settled principles. At common law a person in possession of goods could not confer on another either by sale or pledge any better title to the goods than he himself had. To this general rule there was an exception in cases of sales in market overt, and there was also an apparent exception where the person in possession had a title defeasible on account of fraud. But the general rule was that to make either a sale or a pledge valid against the owner of the goods it must appear that the seller or pledgor had authority, either real or apparent, from the owner to sell or pledge, as the case might be.

The possession of a warehouse receipt, while conclusive of the right of the holder as against the receiptor, did not at common law confer on the holder any greater power as against the true owner than the possession of the goods themselves. *Cole* v. *Northwestern Bank*, 10 C. P. 354, 362, 363. *Stonard* v. *Dunkin*, 2 Camp. 344. *Wilkinson* v. *King*, 2 Camp. 335. *Newsom* v. *Thornton*, 6 East, 17. *Pickering* v. *Busk*, 15 East, 38. *Dyer* v. *Pearson*, 3 B. & C. 38. *Henderson* v. *Williams*, [1895] 1 Q. B. 521. *Burton* v. *Curyea*, 40 Ill. 320. *Commercial Bank of Selma* v. *Hurt*, 99 Ala. 130. See also the notes to *Lickbarrow* v. *Mason*, 1 Smith Lead. Cas. (10th ed.) 674.

Such a receipt, even when in terms running to order and assigns, is not negotiable like a bill of exchange, but merely a symbol or representative of the goods themselves, and the rights arising out of such a receipt correspond, not to those arising out of the indorsement of a negotiable promise for the payment of money, but to those arising out of the actual delivery of the property itself under similar circumstances. *Stollenwerck* v. *Thacher*, 115 Mass. 224.

The holder of a warehouse receipt as well as the person having the actual custody of goods may be either the owner, pledgee, or even a mere bailee at the will of the owner, and there is no more reason to infer from his possession of the receipt that his

interest in the property is that of complete ownership than that it is something less than that.

From time to time statutes have been passed in England and in many of our own States changing somewhat the common law in this respect, but in this State there is no statute applicable to the case at bar.    Nor was there any evidence of a usage or custom or understanding among merchants inconsistent with the common law.    It follows that the consent of Bemis that the bank should stand in the place of Bixby and Company, and that to that end they should use the warehouse receipt in their negotiation with the bank, is not sufficient to create an estoppel against him.

Nor is there anything in his subsequent dealings with the bank which should estop him.    It is true that in his subsequent conduct in getting from Bixby and Company orders upon the bank for releases of the property, and in getting releases from the bank, he acknowledged that there was an outstanding title in the bank to which his own title as owner was in some respects subordinate ; still he had no knowledge whatever, nor does it appear that he suspected or had any reason to suspect, that the interest claimed by the bank was any other or greater than that which he gave to Bixby and Company.    In the absence of anything appearing to the contrary he was justified in assuming that the bank knew the true state of the title, and he was not called upon to make any explanation.    Under these circumstances his silence did not create an estoppel.

The rulings made at the trial were correct.

By the terms of the report the case is to stand for further hearing, to determine the precise amount upon which Bixby and Company are entitled to hold the tobacco.

*So ordered.*