(102 So. 313)

No. 26570.

## FREEPORT & TAMPICO FUEL OIL CORPORATION v. LANGE.

## In re FREEPORT & TAMPICO FUEL OIL CORPORATION.

(Nov. 3, 1924.  Rehearing Denied Dec. 1, 1924.)

*(Syllabus by Editorial Staff.)*

1. Sales ⬤⇒234(5)—Buyer of article in good faith from one obtaining possession of it under false representations held not to acquire title.

Plaintiff in buying junk in good faith from one who acquired possession from owner under fraudulent representations that he was purchasing it as agent of a certain company, *held* to have acquired no title.

2. Sales ⬤⇒234(5)—Delivery by owner of goods to third person held not affected by fact that buyer's representative witnessed delivery to third person.

Where plaintiff company delivered scrap iron to S., in the belief induced by S.'s false representation that it was selling the iron to another through S. as agent, and S. sold goods to purchaser in good faith, fact that when plaintiff delivered iron to S., purchaser's representative was present and witnessed delivery *held* no defense against recovery by owner.

3. Sales ⬤⇒234(9) — Name on buyer's truck used by person to whom owner delivered goods, held not to preclude owner from asserting ownership, as against buyer.

Where a third person procured owner to deliver junk to him by fraudulent representations that he was purchasing same as agent of a brass company, fact that the truck with which he came for the junk bore the name of defendant who purchased the goods from the third person, in good faith, *held* not to estop owner from asserting ownership.

4. Replevin ⬤⇒106—Owner entitled, in default of delivery, to market value.

Owner entitled to recover property is entitled, in default of delivery, to market value of same.

Certiorari to Court of Appeal, Parish of Orleans.

Action by the Freeport & Tampico Fuel Oil Corporation against Mrs. Charles Lange, widow of Charles Lange. The Court of Appeal reversed a judgment for plaintiff, and rendered judgment for defendant, and plaintiff brings certiorari. Judgment of Court of Appeal annulled and set aside, and that of civil district court reinstated.

Dufour, Goldberg & Kammer, of New Orleans (Stamps Farrar, of New Orleans, of counsel), for relator.

Emile Pomes, of New Orleans, for respondent.

OVERTON, J.  Plaintiff was the owner of some brass and scrap iron lying in its yards at Meraux. H. F. Snider learned that plain-

tiff was the owner of this material, and made inquiry of its president, Charles A. Kuhn, to ascertain whether the material was for sale, at the same time representing to Kuhn that he was the agent of the Solis Brass Works, a concern with which plaintiff had had satisfactory business dealings. Kuhn replied that plaintiff was, and Snider made Kuhn an offer on behalf of his alleged principal for the material. Kuhn informed Snider that he could not accept the offer, and would not sell until he had received other offers. After this interview, Snider called to see Kuhn practically every day for nearly a week, but as Kuhn had been busy with other matters, and therefore had not asked others for bids, he was not in position to accept Snider's offer. Towards the end of the week, however, Kuhn obtained an offer from the Louisiana Brass Works, and when Snider called, Kuhn told him that he had received a better offer than he, Snider, had made. Snider then made another offer, which Kuhn accepted. Immediately after his offer was accepted, Snider asked A. C. Lange, the manager of defendant's business, whether he wished to purchase any scrap iron and brass. Lange, on behalf of his principal, replied that he did, and made him an offer at so much a pound. The next day Snider returned, and informed Lange that he would accept his offer. It still being agreeable to Lange, as the representative of defendant, to purchase the material, the sale was made, Snider selling on his own account, and Lange purchasing for his principal in the belief that Snider was the owner of the property. When the offer made by Snider was accepted, he asked Lange whether he would send for the material. Lange agreed to send for it, and sent a truck to plaintiff's place of business to get it, Snider accompanying the driver of the vehicle. There was painted on the sides of the truck that was sent, in large letters, the following: "Estate of Charles Lange." When the truck reached its destination, Snider went into

plaintiff's establishment to see Kuhn. Kuhn, however, was not present, but Snider saw Jerome Wood, plaintiff's machine shop foreman. As delivery could not be made that day, which was a Saturday, Wood told Snider to return the following Monday. The truck was sent back for the material on the day appointed, and when it reached plaintiff's place of business, Snider went in and saw Wood, who had received instructions, in the meantime, to make delivery. The material was loaded, and Wood took a receipt for it, signed in behalf of the Solis Brass Works by Snider. After Snider had delivered the material to defendant, she, through the manager of her business, paid Snider for it, at the price stipulated. A few days after delivery was made to Snider, plaintiff sent a bill to the Solis Brass Works. When the bill was received that company immediately telephoned plaintiff that it had not purchased the material shown by the bill, and, in the course of the conversation that ensued, plaintiff learned that Snider did not represent the Solis Brass Works, and that a fraud had been practiced upon it. Having learned that defendant had purchased the material from Snider, plaintiff made demand upon her for it. As she refused to surrender the property, plaintiff brought this suit to recover it, and, in default of its return, for its market value, which is alleged to be $691.91, and for legal interest on that sum.

The trial court rendered judgment for plaintiff as prayed for. On appeal, the Court of Appeal reversed the judgment and rendered judgment for defendant. The case is brought here by a writ of review.

The foregoing facts, which seem to be undisputed, justify, we think, the following conclusions:

That Snider falsely represented himself to plaintiff as being the agent of the Solis Brass Works; that plaintiff, believing the representation made, sold the material, on credit, to the Solis Brass Works, and made

delivery to Snider, as the agent of those works; that Snider, on his own account, sold the material to defendant, who purchased it for cash, believing that Snider was the owner of the property; that, when plaintiff learned of the fraud practiced upon it by Snider, and learned that defendant had purchased the material, plaintiff made demand on defendant, but defendant, having purchased in good faith, refused to surrender the property.

The question to be determined is, whether, on the facts stated, plaintiff is entitled to recover the material or its value.

In Williston on Sales (2d Ed.) § 635, p. 1599, it is said:

"* * * Where a person falsely represents that he is the agent of another, and by this false representation obtains possession of goods, the seller agreeing to sell to the alleged principal, no title passes. The alleged principal gets no title because he never agreed to buy, and the agent gets no title because the seller never agreed to sell to him."

The rule stated by Williston in the foregoing excerpt, as being the law, is well supported by the authorities. Thus, in Rogers v. Dutton, 182 Mass. 187, 65 N. E. 56, it appears that a man, giving the name of Simmons, applied to Rogers, the plaintiff in the suit, to sell Dutton, the defendant therein, some hay. Plaintiff agreed to sell Dutton the hay, hired a wagon and had one of his own men assist in loading it. The wagon was met by Simmons, and the hay was put in defendant's barn. In the meantime Simmons sold the hay on his own account to defendant, and after delivery received the price and disappeared. After the fraud was discovered, plaintiff demanded the hay, but defendant refused to let him have it. The court, in deciding who was entitled to the hay, said:

"It is evident on these facts that there was no sale and that the plaintiff never parted with his title. Rodliff v. Dallinger, 141 Mass. 1, 4 N. E. 805, 55 Am. Rep. 439. Therefore cases where by the form of the transaction the plaintiff had parted with his title and afterwards the property came to the hands of a bona fide purchaser have no application. We observe that the defendant's being a bona fide purchaser is much dwelt upon in the elaborate argument in his behalf. The phrase most commonly is put forward where there has been a formally complete sale and where therefore the title has passed. There was no complete transaction in this case, and if the defendant is entitled to prevail it must be on the ground that the plaintiff has estopped himself by his conduct to set up a legal title that unquestionably has remained in him undisturbed. But there is not a shadow of an estoppel in the case.

"The only effect of the plaintiff's conduct which was manifested to the defendant was that Simmons was enabled to appear to be in possession of the hay. But it is well settled that entrusting a third person with possession [of property] is not holding him out as owner, and creates no estoppel if he undertakes to sell. The case is more than covered by the decisions. Rodliff v. Dallinger, 141 Mass. 1, 4 N. E. 805, 55 Am. Rep. 439; Bank v. Bemis, 177 Mass. 95, 58 N. E. 476."

The same rule was applied in Smith Premier Typewriter Co. v. Stidger, 18 Colo. App. 261, 71 P. 400. In that case it appears that a man by the name of Weaver obtained from plaintiff a typewriter and a cabinet, representing that he was purchasing as the agent of one McLaughlin. Weaver gave instructions to charge the articles purchased to McLaughlin, and said that the latter, in due time, would send a check in payment for them. Plaintiff believed the representations made, and thinking that it was extending credit to McLaughlin, and selling to him, delivered the typewriter and the cabinet to Weaver. On discovering the fraud, plaintiff demanded of Weaver that he immediately return the property. Weaver sought to retain it for a few days longer, but plaintiff would not consent. The next day the agent of plaintiff, who had the matter in hand, left the city. During his absence Weaver sold the property to defendant. The court, in passing on the question as to whether plaintiff should recover, said:

"If by the above transaction, the property in the typewriter and cabinet passed to Weaver, then the judgment below should be affirmed, otherwise not. Plaintiff did not sell to Weaver; it agreed to sell to McLaughlin, but McLaughlin never bought of it. Plaintiff was induced to part with possession by reason of Weaver's false representations that McLaughlin was purchasing through him (Weaver). The agreement thus reached was void, not merely voidable. The property in the typewriter and cabinet never passed to Weaver, who, having no title, could pass none; therefore, the title of plaintiff was not affected by the sale of Weaver to appellee. Upon this showing plaintiff was entitled to recover."

The court, after reviewing authorities, further said:

" 'The law is well settled that the owner cannot be divested of his property without his own consent, unless he has placed it in the possession or custody of another and given him an apparent or implied right to dispose of it.' Weaver did not acquire the property in the typewriter and cabinet; he therefore, did not pass ownership therein to appellee."

In Hentz v. Miller, 94 N. Y. 64, it appears that a member of the firm of Cutter & Co., cotton brokers, represented to the plaintiff that they had instructions from the Freeman Manufacturing Company to purchase for it a number of bales of cotton. The representation was false, but plaintiff believed it and contracted to sell the number of bales desired to the Freeman Manufacturing Company. The cotton was delivered to Cutter & Co. for delivery to the supposed purchaser, but instead of making delivery to the Freeman Manufacturing Company, Cutter & Co. stored the cotton in a warehouse, and it was finally sold to an innocent purchaser, and later found in defendant's warehouse. The court, in determining whether plaintiff had a right to recover, said:

"The defendant acquired all the right which Cutter & Co. had in the cotton, or which by any act of the real owner they appeared to have. His claim can go no further. One can only transfer that which he himself has, and the real owner is estopped from setting up his own right, only so far as he has allowed another to have the appearance of ownership. * * *"

While in this jurisdiction, no case has been heretofore decided identical in all respects with those cited above, yet cases have been decided in which it appears that the owner had entrusted another with property, giving him no further indicium of title than possession, and in these cases it was held that a sale of the property by the one entrusted with it conveyed no title. As the possession of the property by Snider is one of the facts relied on by defendant to maintain its asserted right to the property, those cases are pertinent here. Among them is the case of Campbell v. Nichols, 11 Rob. 16. In that case it appeared that the plaintiff sent a carriage to his factors, to be forwarded to him when ordered. Plaintiff's factors sent the carriage to a dealer in such articles, with instructions to sell it, and the dealer sold it, at private sale, to the defendant in the case. Plaintiff sued to recover the carriage, and the court, in passing on the case, said:

"It is clear the defendant acquired no right to the property in dispute, his vendors having none themselves nor any authority to convey any. Hart, Butler & Co. [the factors] were entrusted with the carriage only for the purpose of keeping and forwarding it to Texas, whenever they should be ordered so to do. They were vested merely with the possession of the thing; no right of property in it ever passed to them; the sale, therefore, they made of the plaintiff's carriage, was null. Civil Code, art. 2427 [present number 2453]; 18 La. 589."

As sustaining the same principle, the following cases may be cited: Russell v. Favier, 18 La. 585, 36 Am. Dec. 662; Marks v. Landry, 9 Rob. 525; Moore v. Lambeth, 5 La. Ann. 66. See, also, the exhaustive note to Davis v. First Nat. Bank of Wewoka, 25 L. R. A. (N. S.) 760, citing cases from this and other jurisdictions.

An examination of the authorities, cited by

defendant satisfies us that they do not militate against the foregoing rule, nor support defendant in her contention that she is entitled to the property. We deem it necessary to discuss only a few of these authorities. In Harris v. Harris, 109 La. 913, 33 So. 918, the owner for the purpose of enabling the agent to sell the property for her, vested him with the apparent title to it. The owner having so vested the agent, the court properly ruled that she could not recover against an innocent purchaser who bought from the agent. As the agent was vested with the apparent title, the ruling is not in conflict with the cases cited, supra. In Fairex v. Bier, 37 La. Ann. 824, the property disposed of by the one in possession was negotiable bonds, payable to bearer. The purchaser bought the bonds from the holder before they fell due, for value, and without notice of any defect in the title. The law makes an exception as to negotiable instruments, for it prescribes with respect to such instruments, payable to bearer, or to order and indorsed in blank, that any one purchasing from the holder, in due course, acquires a valid title. Hence, the case falls within an exception to the rule mentioned above. In Conner v. Hill & Co., 6 La. Ann. 7, *under the special circumstances* recited in the body of the opinion, which are not similar to those in the present case, the court thought that it would be contrary to good conscience to permit plaintiff to recover, and the case, whatever may be thought of its correctness, turned chiefly upon that point.

[1] In the case at bar, Snider, in our view, acquired no title to the brass and scrap iron, for the reason that plaintiff did not sell to him, but agreed to sell, and thought it was selling, to the Solis Brass Works, Snider's alleged principal. As Snider had no title to the property he could convey none, and therefore when defendant purchased from him she acquired no title.

[2] It is said, however, that plaintiff should not recover, because, by delivering the brass and scrap iron to Snider in the presence of one of defendant's employees, this vested Snider with the appearance of ownership. But in our opinion the act—that is, the delivery—should not be given that effect, even viewing the employee as the representative of defendant. To give it that effect would be equivalent to holding that if a person should deliver property to one, in the presence of another, with no intention of transfering title to the one to whom delivery is made, as for instance, where possession is delivered for purpose of storage, the person witnessing the delivery, if ignorant of its purpose, would be protected in purchasing from the one receiving delivery. This, as we have seen, is clearly not the law.

[3] Nor, in our view, does the fact that when plaintiff made delivery the junk was loaded on a truck bearing the sign "Estate of Charles Lange," alter the case. It does not follow that plaintiff knew from the sign in what business that estate was engaged. For aught that appeared it might have been engaged in the transfer or hauling business, and employed by the Solis Brass Works for the purpose of hauling the material to the city. As a matter of fact, plaintiff knew nothing whatever of that estate. Nor was plaintiff called upon to inquire into that circumstance. The supposed agent of the Solis Brass Works had come in the truck to get the junk, and that was sufficient to prevent the exciting of suspicion.

[4] For the foregoing reasons we think that plaintiff is entitled to recover the property, and, in default of its delivery, the market value of the same. The trial court has correctly fixed that value. Its judgment should be reinstated.

For the reasons assigned, the judgment of the Court of Appeal is annulled and set aside, and that of the civil district court is reinstated and made the judgment of this court; defendant to pay all costs.