## N. O. PUBLIC SERVICE, INC., v. STEWART

(December 10, 1928. Opinion and Decree.)
(January 7, 1929. Rehearing Refused.)

520

Dufour, Rosen and Kammer; A. V. Wolff, of New Orleans, attorneys for plaintiff, appellee.

Bond, Curtis and Hall, of New Orleans, attorneys for S. J. Stewart, defendant, appellant; B. Y. Wolf, of New Orleans, attorney for Wolf Electric Works, Inc., defendant, appellant.

DART, J. ad hoc. Plaintiff suing as the successor of the Receiver of the New Orleans Railway & Light Company, engaged in furnishing light and power to the inhabitants of New Orleans, seeks from defendant Stewart the return of three secondary line transformers described in the petition that were placed by said Receiver about October 1, 1920, on the premises of the McCardle Company in New Orleans, alleging that defendant wrongfully removed the same in the month of May, 1923, and is in possession thereof or is exclusively possessed of the knowledge of the present whereabouts of the same. In the alternative judgment is sought for $1,875.00, the value thereof. The salient allegations around which this contest had chiefly raged is that the said transformers belonged to the railway organization and were so placed as part of plaintiff's distribution system and solely for the purpose of serving secondary power to the consumer, and that at no time did plaintiff sell or authorize any one to sell the same. It is also alleged that after the installation of said transformers, the McCardle Company's plant was transferred to Beane Bros., by whom a new engagement for power was made with the Receiver and the transformers continued to be used by the latter to supply said new consumer.

Stewart answered in substantially a general denial coupled with the affirmative

defense that he purchased the transformers for $195.00 on May 25, 1923, at a public auction sale of the plant of the McCardle Company made by an auctioneer after advertisement of said sale in the New Orleans Times-Picayune. He alleges that in making said purchase he acted in good faith and believed he was acquiring good and clear title to said transformers. That he had no knowledge of plaintiff's alleged ownership until the plaintiff made demand on him for their return in the late summer of the same year, which he declined. He pleads further that plaintiff is estopped because it knew or should have known of the proposed sale as advertised and took no steps to prevent the same. He further avers that in no event should he be held liable for more than "the actual value of the transformers," to-wit, $1175.00. He pleads also that the purchase was made by him in joint account with Wolf Electric Works, Inc., who repaid him one-half the purchase price. That in June, 1923, he acquired his co-owner's share for $375.00 and paid the said price on July 12, 1923. That on June 29, 1923, he sold the said transformers "to one of his customers" and gave an order on the Fitzpatrick Company (the auctioneer) and/or the owners and occupants of the said premises authorizing the delivery of same to his vendee. He prays for the dismissal of plaintiff's suit and for citation of the auctioneer and of the Wolf Company as his warrantors to defend this action and in the alternative should any judgment be rendered against him for similar judgment over against the auctioneer for $195.00 and against the Wolf Company for $277.50.

The Wolf Company filed exceptions which will be noticed later and these being overruled answered joining the defendant against plaintiff, but saying they should be relieved from liability on the call in warranty because Stewart was guilty of bad faith in inducing them to sell their interest for $375.00 when he had in truth and fact already sold the transformers for $1125.00 and concealed that fact from them.

Fitzpatrick Auction Company answered admitting the advertisement of the McCardle plant and the adjudication of the transformers to Stewart, which they believed to be the property of the McCardle Company. They pleaded further that they were acting solely in their capacity as auctioneers and did not warrant the title to said property and had no interest in the transaction other than their commission.

The lower Judge rendered judgment in favor of plaintiff against defendant Stewart for $1175.00 and in favor of Stewart against the Wolf Company for $277.50 and rejected the demand against the auctioneer. Appeals are before us prosecuted by Stewart and by the Wolf Company. Stewart has answered the latter appeal praying for an increase in the judgment to $375.00.

The answer filed in this Court by Stewart asking an increase in the judgment against Wolf Company is without merit because the judgment below was for the exact sum claimed in his call in warranty against that company and if the judgment in plaintiff's favor is correct, defendant has received under his call all that he claimed.

Wolf Company urged below and here an exception that defendant's call in warranty is premature and that no right is granted in law to call the vendor of personal property in warranty when the purchaser is only threatened with eviction but has not been actually evicted. In support

of this position, counsel cites Levy vs. Railways Company, 35 La. Ann. 615, and Harver vs. Pecot, 104 La. 136, 28 So. 936. We think the privity in contract between defendant and exceptor brings the case within the rule in Muntz vs. R. R. Co., 114 La. 437, 38 So. 410. We have been referred to no authorities to sustain the second proposition that the right to call in warranty a vendor of an interest in movable property may not be exercised until after actual eviction occurs and our research has developed none. The exception was properly overruled.

It is conceded in defendant's brief and was also conceded in argument by his learned counsel that the testimony shows certain transformers were placed on the McCardle premises by the plaintiff or its predecessors, but counsel argues there is no testimony to show what became of these transformers except that at the auction sale of May, 1923, all of the property "belonging to the plant" was sold, including these transformers. Considering the physical situation as it was created by plaintiff in the erection of the transformers and as it is proved to have existed at the time of the auction, it would not be stretching inferences to assume, that the transformers sold at auction were the ones originally installed by plaintiff especially as there is no evidence in the record showing any changes in the place or substitution of other transformers, but be this as it may, we have carefully considered the evidence and we are satisfied as was the Judge below that the transformers, sold at auction are the same transformers originally installed by plaintiff and its predecessors.

It is strenuously urged here in brief and argument (though we do not find it set up in the answer) that the transaction between the owner of the transformers and McCardle was a deposit. It is urged that under C. C. Art. 2961, the depositor's right to reclaim the thing is circumscribed by the condition that the thing at the time it is reclaimed must exist in kind in the hands of the depositary or his assigns, and if the latter have disposed of the thing and the price remains due, the depositor must look to the price, and to the preference and privilege thereon carried in his favor in C. C. Arts. 2962 and 3223. Learned counsel in their brief say:

"As it is fundamental that one is not entitled to both the thing and its price, it follows that the Code by giving to the depositor a privilege or preference on the price of the thing deposited denies him the right to reclaim the thing from the hands of the innocent purchaser from the depositary."

We have been greatly interested in this proposition, but under our appreciation of the facts developed by the record, there was no deposit of these transformers within the purview of the statutes governing Voluntary Deposit. The facts are that the McCardle Company applied to the Receiver of the power company for electric power to be furnished for and used in the operation of the plant, and to be paid for as used by the consumer. To supply this power the Receiver erected a frame on the premises of the applicant inside the property line but outside of the buildings of the plant, between the buildings and the fences on Saratoga Street. On this frame, the Receiver installed metal boxes containing three transformers to receive, transform and distribute the high current of the main line into the low pressure current asked for and required in McCardle Company's operations. This mechanical agency in the delivery of electric power between furnisher and consumer is a familiar sight in New Orleans hoisted on poles or frames contiguous to the high

tension lines from which via the transformer, the consumer receives his light and power. It is a part of the distribution system of every furnisher of light and power and it is not "deposited" with the consumer. He could not take care of it even if he so desired. It is put there for another purpose, viz., as an active agent of the line company to transmit and deliver power and light. We are of the opinion that the transaction between the Receiver and McCardle Company was an engagement by the former to sell power to be delivered through the instrumentalities of the seller, that the placing of the transformers within the property lines of the consumer was an incident of this service, and did not give the latter any right over the same. The transformers remained at all times the property of the Receiver and there is no proof showing that he sold or authorized the sale of the same or that plaintiff, his successors in title, authorized the same.

In this connection we should note that after the Receiver's contract with McCardle Company, the plant came into possession of Beane Bros., and that a new contract was made by the Receiver with the latter. How and when the new consumer disappeared from the scene is not shown, and under our findings herein perhaps that problem is not material to the case.

Plaintiff's petition charges defendant with having wrongfully and improperly removed the said transformers or caused them to be removed from said plant and converted to his own use. Defendant as we have shown contends that he purchased the same at a public auction prominently advertised and that he believed when so purchasing, that the transformers were the property of the McCardle Company. In brief, his counsel says that

there is no proof to indicate any bad faith on Stewart's part and he says further that in the argument in the lower court, counsel for plaintiff conceded defendant's good faith. Plaintiff's brief on this point does not make the concession in so many words, but it does say that at the trial defendant proved all the affirmative allegations of his answer except knowledge by plaintiff of the proposed auction sale.

Having found as we do that the transformers were the property of plaintiff and that the McCardle Company had no title to the same, and having found further that the latter company did not have physical possession of the property as depositary or otherwise, the case falls within the provisions of C. C. 2453 as interpreted and construed in a long line of decisions of the Supreme Court recently reviewed in Freeport & Tampico Fuel Oil Corporation vs. Lange, 157 La. 217, 102 So. 313, at pp. 224 et seq. But if for the purpose of argument we concede that the fact that the transformers were within the fence lines of the McCardle plant tended to create the appearance of possession in that company, the defendant's case under the facts would not be in any better state as is illustrated by the case of Campbell vs. Nicholls, 11 Rob. (La.) 16-18.

Defendant, however, insists that this rule has no application here because he purchased the transformers at public auction in good faith, that is, not knowing plaintiff owned the same and believing that they formed part of the plant of the McCardle Company.

It is not contended that plaintiff was notified of this sale but it is argued that the published advertisement of the same, was sufficient to put plaintiff on notice or at least on guard. This advertisement is the second of a half dozen printed in sequence in two-column width in a morn-

ing newspaper. The headlines indicate a "public auction sale at McCardle Cotton Company's plant," naming the location. The type graduates in size from the largest at the top of the notice to the smallest at the bottom. The transformers are not mentioned until near the end of the advertisement, where there appears in small type the words "75 K. V. A. transformer, motors up to 50 H. P." Assuming but not deciding that one is bound to read everything that appears in a newspaper, there is nothing in this advertisement to suggest to a corporation dealing with Beane Brothers that it is contemplated to sell at McCardle's plant the three transformers in question here but aside from this the proof convinces us that plaintiff had no knowledge of the proposed sale before it occurred and that it was only in August, three months afterwards that rumors of the removal of the transformers reached the ears of the plaintiff's officials.

Article 2603, Civil Code, provides that the sale by auction whether made at the will of the seller or by direction of the law is subjected to the rules hereinafter mentioned governing all such sales alike and Article 2620 says the sale on execution transfers the property of the thing to the purchaser as completely as if the owner had sold it himself; but it transfers only the rights of the debtor such as they are, and in the absence of statutes or decisions establishing a contrary rule in voluntary sales we cannot extend to the latter a wider liberty or meaning than is prescribed for judicial sales.

The only qualification we have found of the rule that the sale of a thing belonging to another person is null, C. C. 2453, is that which is found in Article 3507 under the title of "Prescription of Movables." This says:

"If however the possessor of a thing stolen or lost bought it at public auction or from a person in the habit of selling such things the owner of the thing cannot obtain restitution of it without returning to the purchaser the price it cost him."

Without splitting hairs on the nature or character of the conduct of those who permitted the auctioneer to sell the transformers, it is certain the result to the owner was as effectual as though they were actually stolen or lost. But they were not in that category when defendant acquired them at the sale, and if this were all there is in this case we would be compelled to affirm the judgment.

It appears that after plaintiff discovered the removal of the transformers, they called on defendant Stewart and demanded the return of the same, together with meters, instrument-transformers and connections belonging to plaintiff and bought by Stewart at the same sale. He admitted possession of these last named things and after some discussion returned same to the plaintiff; as to the three transformers he said he had sold the same but positively refused to give the name of the purchaser, or to state the present location of the things. When he filed his answer to this suit he preserved the same reticence in his pleading, confining himself to the statement that on June 29, 1923, he sold the transformers to "one of his customers." Nearly a year after filing this answer he amended the same, averring that he sold the property to Citizens Light & Power Company and that it remained in possession of said company until on or about January 1, 1926, at which time all the property and effects of the Citizens Company were transferred to plaintiff herein, which is now in possession of the said transformers, and by reason of such ownership and possession this suit should be

dismissed. The result is that from August 1923, to the date of this answer plaintiff was kept in ignorance of the name of Stewart's assignee and of course, in ignorance of the location of the property.

We find nothing in the record controverting the statement made in this answer that plaintiff has now come into possession of the transformers but we understood the learned counsel for plaintiff to admit this in argument. While defendant has done everything in his power to prevent plaintiff from repossessing the things in issue, we are nevertheless faced with the fact the disputed property has by chance or otherwise come back into the possession of the true owner, and without any aid or assistance from the defendant. This suit has for its object the return of the things or their value. It may well be that these transformers in their condition when recovered had no commercial or other value, but we find no proof in the record to assist us in determining this fact. The same situation governs as to the price or other costs and expenses that plaintiff has incurred or paid to get back its property, or as to losses sustained by plaintiff through the deprivation of the things during the period after August, 1923.

We are earnestly pressed by plaintiff's counsel to maintain the award made by the lower. Judge which seems to be predicated on the value placed on the transformers by defendant in his original answer, but if we are correct in this assumption the state of the record does not furnish any guide to fix the value at that sum.

The equities of plaintiff's case are very appealing and we think justice requires us to afford it an opportunity to make the proof indicated in this opinion.

It is therefore ordered that the judgments appealed from in favor of plaintiff and against the defendant and in favor of defendant against the Wolf Electric Company, Inc., be and they are hereby reversed, and the case is now remanded to the court below for further proceedings and judgments in accordance with the views expressed in this opinion, costs of the District Court to abide the final decision under this remand, the costs of appeal on the main case to be paid by plaintiff, appellee, and those on the call in warranty by defendant, Stewart, appellee therein.