45 So.2d 404 (1950)
PORT FINANCE CO., Inc.
v.
BER.
No. 19395.
Court of Appeal of Louisiana, Orleans.
March 27, 1950.
Nelson S. Wooddy, New Orleans, for appellant.
Henry C. Vosbein and Alfred J. Bonomo, Jr., New Orleans, for appellee.
REGAN, Judge.
Plaintiff, Port Finance Company, Inc., initiated this suit and prayed for a writ of sequestration in order to be decreed the owner of a 1939 Chevrolet Sedan and for the restoration of the automobile to its *405 possession, or, in the alternative, prayed for judgment in the amount of $701.95, which represented the monetary value of the automobile.
Defendant, John L. Ber, answered denying that plaintiff was the owner of the automobile in dispute, and contended that he, the defendant, acquired the Chevrolet Sedan by virtue of a good and merchantable title and has, since acquisition, continuously had possession thereof.
The court, a qua, decreed defendant to be the owner of the automobile, dismissing plaintiff's suit, and recalled the writ of sequestration. Hence this appeal by plaintiff.
The record reveals, as briefly as is consonant with an understanding of issues peculiar to our jurisprudence, that plaintiff is in the business of buying, selling and financing automobiles in the City of Lake Charles, Louisiana. Defendant is in business in the City of New Orleans and is the proprietor of what is colloquially known as a "used car lot" and is actively engaged in buying and selling automobiles.
On May 6th, 1948, an individual possessing the name of Azenor Dupuis, but impersonating and assuming the name of Webster Daugat, a responsible citizen of good financial standing residing in Marksville, Louisiana, approached plaintiff, through its assistant manager, Felix Pierrotti, relative to the purchase of a Chevrolet Sedan owned by plaintiff. After the usual formalities the sale of the car was agreed upon for the price of $701.95. Azenor Dupuis, in pursuance of his artifice and deception as Webster Daugat, drew a check on the Marksville Union Bank to the order of plaintiff and signed the name of Webster Daugat as maker of the check. Plaintiff's assistant manager, Pierrotti, in the exercise of caution, telephoned the Cashier of the bank upon which the check was drawn and inquired if the check of Webster Daugat "was good" and furnished the cashier with a physical description of the impostor, Azenor Dupuis. The Cashier replied that a check for $701.95, drawn by Webster Daugat "was good" and that the description of the drawer of the check appeared to conform to Daugat. Plaintiff, executed a written bill of sale to Webster Daugat and physically delivered the car to Dupuis, whom plaintiff, after investigation, believed to be Webster Daugat.
Dupuis, continuing his deception and using the recently acquired car as transportation, on the same day, drove from the City of Lake Charles to New Orleans. On the following day, May 7, 1949, Dupuis, through the medium of a written bill of sale and attached thereto the original bill of sale from plaintiff, dated May 6, 1948, sold and delivered the Chevrolet to the defendant, John L. Ber, for the price of $400.00. The impostor, Dupuis, again signed the name of Webster Daugat to this bill of sale. Defendant, in payment of the purchase price of $400.00, drew a check on the Whitney National Bank to the order of Webster Daugat and Dupuis signed the endorsement "Webster Daugat". John L. Ber also endorsed the said check and thereafter arranged and facilitated the cashing thereof for Dupuis.
On May 12, 1948, the check in the amount of $701.95, which Dupuis had originally given to plaintiff, on May 6th, 1948, in Lake Charles, was returned to plaintiff by the bank upon which it was drawn, accompanied by a notation that the signature of Webster Daugat had been forged and, of course, refused payment. Immediately, officers of the law were notified of the fraud which had been perpetrated and the hunt was on for the Chevrolet and Dupuis. Several days of exhaustive inquiry then bore fruit and revealed to plaintiff that Dupuis was incarcerated in jail in Alexandria, Louisiana. Plaintiff's assistant manager, Pierrotti, hurriedly visited Dupuis in Alexandria and was informed that Dupuis had sold the Chevrolet to defendant, John L. Ber of New Orleans. Pierrotti immediately drove to New Orleans and related to defendant the imposture under which Dupuis had secured the car from plaintiff and demanded that defendant return the car to plaintiff. Defendant testified that this conversation occurred on or about May 17, 1948. Defendant refused to accede to plaintiff's demand *406 and thereafter a suit was filed to judicially determine title to the car.
Plaintiff contends that title to the automobile is still in itself, since no title passed to the purchaser Dupuis in Lake Charles, nor to the defendant Ber in New Orleans, because the sale was consummated by virtue of imposture, fraud, artifice and without the payment of any consideration whatsoever, and that plaintiff intended and agreed to accept the check of Webster Daugat, the individual impersonated by Dupuis, in consideration of the transfer of ownership of the automobile, and not a check on which the name of the maker was forged.
Defendant, in opposition to this contention, maintains that both the original purchaser, Dupuis, and himself, acquired valid title to the automobile and, in the alternative, pleads the defense of equitable estoppel.
Apparently from its inception this case has been fraught with confusion relative to the applicability of the rules of common law, the French Civil Code, and the Louisiana Civil Code, or an adulterated mixture of all three to the facts involved herein.
The complexities of the subject before us here is comprehensively reviewed in 23 Tulane Law Review, page 420 as follow:
"The common law rule that a bona fide purchaser for value and without notice prevails over the original seller has its origin in equity and is based on the theory that the legal right of the third party cuts off the equity of the original seller. * * *. It is also essential that the third party have no notice of the defective title. * * *. The doctrine is predicated on `title'. A vendee who obtains a movable by a vice of consent (i. e. error, fraud or duress) acquires only a voidable title which the vendor may attack in equity. * * *. But upon a transfer by the vendee to a bona fide purchaser, the voidable title becomes good. * * *. However, if the third party purchases from one who, having been intrusted with goods, breaches the trust by selling, no protection is afforded because no title passes. * * *. Likewise, if the third party purchases from one who has obtained the movable by larceny no title passes and the bona fide purchaser doctrine is inapplicable. * * *.
"The common law draws a sharp distinction in the types of misrepresentations by the purchaser to the original seller. An inital purchaser who, inter praesentes falsely represents to the seller that he is another person, acquires a voidable title which becomes indefeasible upon transfer to a bona fide purchaser. * * *. But, if the false representation is made inter absentes, no title passes and the third party is without protection. * * *. The distinction is that in transactions inter praesentes the primary intent of the seller is to pass title to the person before him, while in transactions inter absentes the primary intent of the seller is to pass title to the person whose name appears on the letter. * * *. If the initial buyer obtains the movable by misrepresenting himself as an agent he obtains no title and the only manner in which a third party can protect himself is by proving that the original seller was at fault. * * *.
"The corresponding civil law doctrine of la possession vaut titre protects the person who is in possession. Art. 2279, French Civil Code. (This article of the French Civil Code was not carried over into the Louisiana Civil Code of 1870). The basic distinction between the doctrines is that the bona fide purchaser doctrine terminates only prior technical equities while la possession vaut titre terminates any interest except that of an owner of goods which were lost or stolen. * * *. On two occasions it was argued that the civil law doctrine should be introduced into Louisiana, but on both occasions the courts expressly rejected its introduction. Holton v. Hubbard, 1897, 49 La.Ann. 715, 22 So. 338; Holloway v. A. J. Ingersoll Co., 1931, 16 La.App. 494, 133 So. 819. Louisiana has received the common-law concept of bona fide purchaser into its jurisprudence. In an early case a third party was protected on the ground that the voidable title of the first purchaser became good upon transfer. * * *. It appears that the jurisprudence has accepted the exceptions of the common law, because a third party who purchases *407 from a person who breaches a confidence by selling goods with which he has been intrusted is not protected. Campbell v. Nichols, 11 Rob. 16. * * *.
"Louisiana jurisprudence is in accord with the common law rule which denies protection to a bona fide purchaser who acquires the property from a person who has misrepresented himself as the agent of someone. Freeport & Tampico Fuel Oil Corp. v. Lange, 1924, 157 La. 217, 102 So. 313; see Note, 5 Tulane L.Rev. 670 (1931)".
See, also, Franklin, Security of Acquisition and of transaction, Le Possession Vaut Titre and Bona Fide Purchase, 6 Tulane L.Review 589.
Our jurisprudence has very definitely established the rule that "if the seller in Louisiana obtains his goods by theft he cannot pass title to a bona fide purchaser. Lynn v. Lafitte, La.App., 1937, 177 So. 83". 23 Tulane Law Review, supra.
We are in accord with plaintiff's contention that the possession of the automobile by the impostor, Dupuis, was secured by fraud, artifice, misrepresentation and without the payment of any consideration whatsoever. In our opinion the automobile in question was skillfully and with savoie faire stolen by Dupuis from plaintiff, the Port Finance Company and this, we believe, is confirmed by Article 67 of the Criminal Code of Louisiana which defines "theft" as follows: "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."
Therefore, in conformity with our jurisprudence "if a seller in Louisiana obtains his goods by theft, he cannot pass title to a bona fide purchaser. Lynn v. Lafitte, La.App., 177 So. 83." 23 Tulane L.Rev. supra.
Assuming arguendo, that our interpretation and resulting opinion of what constitutes theft under our jurisprudence is in error, the result, so far as the defendant is concerned, would be the same for a careful reading of all the evidence in the record convinces us that the title to the automobile is still in the plaintiff. Plaintiff did not consent nor intend to transfer title to the impostor Dupuis. Plaintiff agreed, consented and intended to transfer title to Webster Daugat, an individual who, plaintiff believed, after prudent and reasonable investigation, was a responsible citizen of good financial standing, residing in Marksville, Louisiana.
In our opinion, the plaintiff, through its assistant manager, exercised all of the caution that a reasonably prudent man should have exercised under the circumstances prevailing at that time. The record stands uncontradicted to the effect that Pierrotti telephoned the Cashier of the Marksville Bank upon which the check was drawn and inquired if a check of Webster Daugat in the sum of $701.95 was good, furnishing the cashier with a physical description of the impostor Dupuis.
In our opinion the caution which plaintiff's assistant manager exercised under the circumstances relieved the original seller of any negligence in the premises. We have been especially cognizant of this factor in view of the existence of Louisiana decisions containing dicta to the effect that the bona fide purchaser prevails if he proves that the original seller was negligent. Russell v. Kunemann, 19 La.Ann. 517; Holloway v. Ingersoll Company, 16 La.App. 494, 133 So. 819; Lynn v. Lafitte, supra.
We have been unable to find any evidence in the record wherein the defendant has successfully proved that the plaintiff herein was negligent in its negotiations with the impostor Dupuis. On the contrary, we are impressed unfavorably with respect to defendant's negotiations with Dupuis, in that defendant purchased from Dupuis within a period of twenty-four hours an automobile which he knew originally sold for approximately $700.00, for the price of $400.00 which, of itself, in our opinion, should have at least aroused *408 the suspicion of an ordinary prudent man engaged in the business of buying and selling used cars.
The provisions of Articles 2439 and 2452 of the Civil Code sustain our conclusion that Dupuis acquired no title to the automobile. These articles read as follows:
2439. "The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
"Three circumstances concur to the perfection of the contract, to-wit: the thing sold, the price and the consent."
2452. "The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person." See, also, Article 1847 of the Civil Code.
Under the rule enunciated in Article 2452 of the Civil Code, no one can be divested of his property without his consent, and, consequently, even an innocent third person under a defective title cannot hold against the legal owner. We have not been furnished with any authority which would justify this court in making this case an exception to the general rule imposing upon the transferee the precariousness of his author's title which, of course, requires the legal owner's consent to the divesture of his title.
The principal defense pleaded by the defendant is that of equitable estoppel which rests upon the philosophy that where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed upon him who most contributes to it. We also observe that the philosophy of that doctrine, when applied to the facts herein, favors plaintiff rather than defendant.
However, in our opinion, the plea of equitable estoppel cannot be permitted to prevail when in conflict with and diametrically opposed to the positive written law. See Article 21 of the Civil Code.
In passing, it is interesting, though somewhat confusing to observe, that the doctrine of equitable estoppel is based on equity, and the civil law has not recognized a distinction between law and equity in, at least, fifteen hundred years. This is one of the inconsistencies that the reception of the bona fide purchaser doctrine into our jurisprudence has presented.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the plaintiff, Port Finance Company, and against the defendant, John L. Ber, decreeing the plaintiff to be the owner of a 1939 Chevrolet Tudor Sedan bearing Motor No. 1957-753, and restoring said automobile to its possession or, in the alternative, that there be judgment herein in favor of the plaintiff, Port Finance Company and against the defendant, John L. Ber, in the full sum of $701.95, with legal interest thereon from judicial demand until paid, and for all costs.
Reversed.