(112 So. 726)

No. 26449.

FRED G. JONES & CO. v. SANFORD.

April 25, 1927.

*(Syllabus by Editorial Staff.)*

1. Sales �köÿ23(3)—Letter acknowledging receipt of buyer's telegram and stating shipment could be made in 30 days, held acceptance of offer to buy lumber.

Letter by lumber seller's manager stating that he had received buyer's telegram accepting two carloads of lumber, and stating that shipment could be made within 30 days, *held* acceptance of offer to buy lumber by telegram.

2. Principal and agent ⊃170(3) — Mandate; seller not disavowing manager's letter accepting offer to buy lumber held bound thereby.

Seller of lumber, absent when buyer's order was received and accepted by seller's manager, not disavowing acceptance in letter to buyer, was bound by manager's acceptance.

3. Principal and agent ⊃170(3) — Mandate; principal not promptly disavowing agent's exceeding authority will be bound.

Where agent exceeds authority, if principal does not promptly disavow agent's authority, he will be bound.

4. Sales ⊃89—Seller adopting order accepted by manager cannot bind buyer without its consent by conditions added to order.

In absence of disavowal of manager's authority to accept order for lumber, anything seller may have added to order as accepted by manager was not binding on buyer without its consent.

5. Sales ⊃89—Buyer without reply to seller's letter specifying condition of shipment had valid contract, where seller had not disavowed agent's authority in accepting buyer's order.

Where seller had not disavowed agent's authority to bind him by accepting order for lumber, buyer had a valid contract without reply to seller's letter that lumber would be shipped in its regular order, subject to seller's regular terms and guaranty of grade, weight, and count.

6. Sales ⊃418(7)—Seller breaching contract to sell lumber held liable for difference between contract price and price buyer had to pay in open market.

Seller refusing to supply lumber under contract was liable in damages for difference between contract price and price buyer had to pay for same kind of lumber in open market.

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Prentiss B. Carter, Judge.

Action by Fred G. Jones & Co. against Frederick L. Sanford. From a judgment for plaintiff, defendant appeals. Affirmed.

Ott & Johnson, of Franklinton, and Dymond & Levy, of New Orleans, for appellant.

Dart & Dart, of New Orleans, Bascom D. Talley, of Bogalusa, and H. Grady Price, of New Orleans, for appellee.

OVERTON, J. This is a suit for damages for the breach of an alleged contract to deliver two carloads of lumber. pursuant to a sale thereof, the damages consisting of the expense to which plaintiff alleges it was put to on account of the breach, the loss of profits caused by the breach, and attorney's fees for prosecuting this suit, the damages aggregating $2,861.35. The main defense, and the only one upon which defendant relies here, is that no such contract as the one alleged by plaintiff was entered into.

The contract alleged results from certain letters and telegrams between plaintiff and defendant. It appears that, on May 22, 1919, plaintiff addressed a letter to defendant, requesting quotations on certain grades of lumber, including 1 car of 1x4 B and better Y. P. flooring and 1 car of 1x4 No. 9, common, Y. P. flooring. On May 26, 1919, defendant wrote plaintiff (the letter being signed by him in person) quoting prices as follows: 1x4 B & B flat flooring, mill weight, 2,100, $41, and 1x4 No. 1 flat flooring, mill weight, 2,100, $38, subject to prior sale, and immediate acceptance. On the morning of May 29, 1919, plain-

tiff telegraphed defendant from its domicile and place of business in Louisville, Ky., acknowledging receipt of the quotations, and ordering one car of No. 1 common flooring and one of B and better flooring, 1x4, kiln dried, and requesting an answer, stating date of shipment. On the day following the sending of this telegram, plaintiff wrote defendant as follows:

"Confirming order telegraphed you yesterday, please enter our order for the following to be shipped to us here:
"1 car 1x4 No. 1 com. yel. pine flooring K. D. $38 per M.
"1 car 1x4 B and better yel. pine flooring, K. D. $41 per M.
"F. o. b. cars mill.
"We are badly in need of this stock, and trust you can made immediate shipment. Please wire us upon receipt of this at our expense stating when you will ship."

When the telegram and the letter confirming it were received at defendant's mill at Zona, in Washington parish, defendant was absent on a visit North. On the same day that plaintiff wrote the letter confirming its telegram, defendant, by P. F. Mackie, the manager of the mill, wrote plaintiff, as follows:

"We have your wire of the 29th inst., just delivered this morning, accepting one car each of No. 1 common and B and better flooring 1x4 K. D.
"Regarding shipment, will say that we have a number of orders on file that will have to be shipped prior to this one, but that we can certainly make shipment within 30 days, which we trust will be satisfactory."

On June 3, 1919, plaintiff wrote defendant, acknowledging receipt of this letter, observing that defendant stated therein that he would make shipment within 30 days, and trusting that he would do everything possible to hasten the shipment. On June 16, 1919, plaintiff wrote defendant again requesting him to hasten the shipment, since it was sorely in need of the lumber. When this letter reached defendant's mill, defendant had re-

turned from his trip North, and he wrote plaintiff as follows:

"I have yours of the 16th, and this was the first notice I had that you had ordered this stock. I was away when your order came in or it would have been returned as we had sold all we can furnish before the middle or last of July, but your order will of course be shipped in its regular order subject to our regular terms of cash less 2 per cent. within 10 days of date of invoice, I guaranteeing grade, weight and count."

Plaintiff did not reply to this letter, but on July 26, 1919, wrote defendant, calling his attention to the fact that the shipment had not arrived, and requesting him to ship the lumber without further delay. On August 4, 1919, defendant, in reply to this letter, wrote plaintiff as follows:

"I have your letter of the 26th, and in reply will say that I wrote you about three weeks ago that this order was accepted subject to our usual terms of 98 per cent. cash. Not having heard from you I considered this order canceled."

The lumber was not shipped, and plaintiff, to obtain lumber to take its place, had to go into the open market and purchase it at a considerably advanced price, having to pay $61 a thousand feet for No. 1 common and $72 a thousand for B and better.

Defendant's liability for the difference between the price plaintiff alleges it agreed to pay defendant for the lumber and the price that defendant had to pay for the same kind of lumber on the open market is the only issue presented by the appeal.

The defense, as stated, is that there was no contract for the shipment of the lumber. This defense is based in part upon the contention that the manager of defendant's mill, Mackie, had no authority to accept plaintiff's order on May 30, 1919, and, in part, upon the fact that plaintiff made no reply to defendant's letter of June 20, 1919, saying that plaintiff's order would be shipped in its regular order, subject to defendant's regular terms of cash less 2 per cent. if paid within 10 days of date

of invoice, defendant guaranteeing grade, weight, and count.

[1-5] In our opinion the manager's letter was an acceptance of plaintiff's order. When this acceptance came to defendant's knowledge, he did not disavow the authority of the manager to accept the order. There is nothing in defendant's letter suggesting such lack of authority. When the letter reached plaintiff all that it or any one else could construe it to mean was that had defendant been present when the order was received, he would have returned it, since the mill had sold all the lumber it could furnish up to the middle or latter part of July, but nevertheless the order would be shipped in its regular course, subject to defendant's usual terms and guarantee. There is nothing here suggesting, even in the remotest, a lack of authority in the manager to accept the order. Where an agent exceeds his authority it is the duty of the principal to promptly disavow the agent's authority to bind him, else the principal will be bound. As defendant, when knowledge of the manager's acceptance came to him, failed to disavow the manager's authority to bind him by the acceptance, he became bound thereby, and in the absence of such a disavowal, anything defendant may have added to the order, as accepted by his agent, was not binding on plaintiff, without its consent. But everything, except the intimation that the lumber would not be shipped until the middle or latter part of July, added by defendant to the order, as accepted by his agent, was favorable to plaintiff. The guaranty, which was, in fact, implied in the acceptance by the agent, was favorable. The provision as to 2 per cent. discount for payment within 10 days was also favorable, for since the order, as accepted by the agent, made no provision as to terms of credit or discount, defendant had the right to demand, in making delivery, that payment be made cash, without discount. The reason given by defendant, supporting the intimation that the lumber would not be shipped until the middle or latter part of July, may be considered as an excuse, made in good faith, for being unable to deliver the lumber by the last of June, the time that the manager stated he thought delivery could be made. While it would have simplified matters for plaintiff to have replied to defendant's letter of June 20, 1919, yet there was no legal reason why it should have done so. Defendant had not disavowed his agent's authority to bind him by accepting the order. Hence, plaintiff, without such reply, had a valid contract.

[6] From the foregoing, our conclusion is that defendant should have shipped the lumber, and is liable for the difference between the price at which plaintiff purchased it from defendant and the price at which plaintiff had to pay for the same kind of lumber in the open market. The trial judge found that difference to be $864. His finding is correct. Judgment was rendered only for that amount, with legal interest thereon from August 30, 1919.

The judgment appealed from is affirmed.