No. 3930

Second Circuit

———

HOLLOWAY v. A. J. INGERSOLL CO., INC.

———

(February 26, 1931.   Opinion and Decree.)
(April 9, 1931.   Rehearing Refused.)
(May 25, 1931.   Writs of Certiorari and Review Refused by Supreme Court.)

———

Wilson & Abramson, of Shreveport, attorneys for plaintiff, appellee.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendant, appellant.

DREW, J. Plaintiff alleges that on or about the 28th day of September, 1929, he owned and possessed four bales of cotton, giving the numbers and weights of said bales, and that, on or about the above date, he was induced by one W. P. Cobb, a merchant in Shreveport, to store the four bales of cotton with him, and that he delivered the cotton to a place which the said Cobb designated as his warehouse, but which plaintiff has since found to be untrue. That the said Cobb fraudulently represented to plaintiff that the place where the cotton was delivered was his warehouse, whereas, as a matter of fact, it was not. That shortly thereafter, the said Cobb sold petitioner's cotton to A. J. Ingersoll Company, Incorporated, who bought and accepted same and who exercised dominion and control over the said cotton. That Cobb had no authority or right whatsoever to transfer or sell the cotton to defendant or to any one else, and that the sale by Cobb of property belonging to plaintiff was therefore null and void. He alleges that he had made demand for the restoration of the cotton or the value thereof from the said defendant, A. J. Ingersoll Company, Incorporated, and they have specially refused and failed to comply with his demands. That he is therefore entitled to have the said defendant restore the cotton to him or to pay him the value of same at the time it was purchased, alleging said value to be $473, with 5 per cent interest thereon. He prays that the defendant be ordered to restore to him the four bales of cotton, and, in the alternative, should they be unable to return the said cotton, that there be judgment in his favor against defendant in the sum of $473, with 5 per cent interest thereon from September 28, 1929, and for costs.

Defendant filed an exception of no cause or right of action, which was overruled by the lower court, and same is not pressed in this court. Defendant answered, denying in main the allegations of plaintiff's petition, and alleged that A. J. Ingersoll, president of the defendant company and its predecessor in business, have engaged publicly in the business of buying cotton in the city of Shreveport for more than twenty-five years; that during 1929, W. P. Cobb kept a general merchandise store at 204 Texas street, in the city of Shreveport, where he publicly bought, sold, and exchanged merchandise, farm supplies, and farm produce; that beginning on or about September 23, 1928, and continuing from day to day, the said W. P. Cobb sold to defendant, and defendant bought from him in the open market, in good faith, relying on his ownership and right to sell at current market prices, seventy-four bales of cotton, more or less, including the four bales claimed by plaintiff, giving the weights of the said four bales and the price at 17½ cents per pound, all of which at the time of purchase was delivered, weighed, and received into defendant's warehouse, at 704 Commerce street, and promptly paid for.

It is further alleged that all of said cotton was bought for resale, and in due course, before the filing of this suit and before any demand or notice of any interest claimed therein by plaintiff, defendant sold, shipped, delivered, and disposed of the four bales, bearing numbers as recited in plaintiff's petition, for $371.22, and that, if plaintiff owned said cotton or any part of it, he had authorized the said Cobb to sell the same, or had voluntarily placed it in his possession and control, with knowledge of the nature and character of his business and his intention to sell same in the open market, and that it is informed and believes that plaintiff assisted in the sale and delivery of the

said cotton at defendant's warehouse, with knowledge that it was being bought and paid for, and by his own acts and conduct he is estopped to deny the sale or claim the proceeds or the value of the cotton.

On the above issues the case was tried in the lower court, resulting in judgment for plaintiff in the sum of $376.25, with 5 per cent interest thereon from September 28, 1930. From this judgment, the defendant has appealed, and plaintiff has not answered the appeal.

The evidence in the case clearly establishes that the plaintiff was the owner of the four bales of cotton, and that he ginned same and stored it at Mr. Van Hoose's gin in or near Shreveport. He became acquainted with the merchant by the name of "Cobb," who was selling groceries in Shreveport at a low price. Cobb told plaintiff that a Mr. Bowman was coming to Shreveport from New York on Thursday, and would buy cotton and pay 20 cents a pound for a fair grade. The market value of cotton at the time was 17½ cents. Through this ruse, Cobb induced the plaintiff to bring his cotton to Shreveport and to store it with him until Mr. Bowman arrived. Plaintiff removed the cotton from Mr. Van Hoose's gin and brought it to Shreveport to Cobb's place of business. Cobb went with plaintiff to a warehouse which he told plaintiff was his warehouse, when, as a matter of fact, the warehouse did not belong to Cobb, but was owned and used by the defendant company as a warehouse for cotton and a place where it purchased and weighed its cotton. Plaintiff had never sold any cotton at this warehouse and did not know it was the warehouse of any one other than Mr. Cobb. Cobb and plaintiff drove the wagon with the cotton on it up to defendant's warehouse, and defendant's agent took the cotton off the wagon, weighed it, graded it, and gave Cobb a receipt for it. Plaintiff, an ordinary negro, trusting fully in Cobb, believed he was delivering his cotton to Cobb's warehouse and paid little or no attention to the weighing and grading of the cotton or the receipt which was given to Cobb for the cotton. He left the cotton with Cobb, believing that he was storing it with him until Mr. Bowman could arrive from New York.

After unloading the cotton, plaintiff returned to Cobb's store where Cobb gave to him the following receipt:

"This is to certify that Abe Holloway has stored in my warehouse four bales of cotton, numbers 3501—420; 1376—620; 842—528; 1247—552.
                    "[Signed] W. P. Cobb."

On the next day plaintiff came back to Cobb's store to meet Mr. Bowman, fully expecting to sell his cotton to him for 20 cents a pound, at which time he learned that Cobb had left the country, and that his cotton had been sold by Cobb to the defendant herein. Plaintiff at no time authorized or empowered Cobb to sell the cotton. The very fact that plaintiff accepted from Cobb the above-quoted receipt shows clearly that he did not know that his cotton was being sold at the time it was sold.

Plaintiff relies on article 2452 of the Civil Code:

"The sale of a thing belonging to another person is null; it may give rise to damages when the buyer knew not that the thing belonged to another person."

In Campbell v. Nichols, 11 Rob. 16, the court, in construing this article, said:

"The evidence satisfactorily establishes the plaintiff's ownership of the carriage. In May, 1840, an agent of his in Mississippi, consigned it to Hart, Butler &

Co., commission merchants, at New Orleans, to be shipped to Texas, at such time as the plaintiff should direct. Hart, Butler & Co., contrary to their instructions, put the carriage into the hands of Dubois and Kendig for sale. The latter sold it to the defendant for $150, but did not represent themselves as the agents of Hart, Butler & Co. It is clear the defendant acquired no right to the property in dispute, his vendors having none themselves, nor any authority to convey any. Hart, Butler & Co. were entrusted with the carriage only for the purpose of keeping and forwarding it to Texas, whenever they should be ordered so to do. They were vested merely with the possession of the thing; no right of property in it ever passed to them; the sale, therefore, they made of the plaintiff's carriage, was null. Civil Code, art. 2427 (now 2452); and (Russell v. Faviel) 18 La. 518 (36 Am. Dec. 662)." Perryman v. Demaret, 11 La. 347.

In the case of Stern Brothers v. Germania National Bank, 34 La. Ann. 1119, the plaintiff intrusted to the firm of A. Eimer Bader & Co., for collection merely, certain detached coupons of the state of Louisiana, said bonds being unconditional obligations of the state to pay to bearer certain sums of money at dates specified thereon. After their maturity A. Eimer Bader & Co. pledged them to defendant to secure a loan of $5,000 made to said firm. Plaintiff sued to recover said coupons, and the court said:

"There is no controversy as to essential facts, viz.: that plaintiffs owned the coupons; that Bader & Co. had no authority from plaintiffs to sell or pledge them, and no other authority except to collect; that they were pledged by Bader & Co. for their personal debt, in which plaintiffs had no concern; and that said pledge was made long after the maturity of the coupons.

"The authorities are quite unanimous and entirely convincing, that the purchaser or pledgee of negotiable instruments after maturity, whose rights are derived from one who is not the owner, and who is not authorized to sell or pledge, acquires no

title or right thereto or thereupon, as against the true owner. C. C. 2452; Bird v. Cockrem, 28 La. Ann. 70; Henderson v. Case, 31 La. Ann. 215; Davis v. Bradley, 26 La. Ann. 555; Foley v. Smith, 6 Wall. 493, 18 L. Ed. 931."

In this case, the defendant invoked the doctrine that, where one or two innocent persons must suffer, the loss should fall on the one who enabled the third person to commit the fraud, and the court said:

"This objection to the application of the principle now under discussion is not new. It has been made, considered and overruled, both by this Court and the Supreme Court of the United States. Foley v. Smith, supra; Bird v. Cockrem, supra."

Defendant finally urged that, by conferring upon Bader & Co. an apparent title or power of disposition, plaintiffs are estopped from asserting title against an innocent third person dealing with such apparent owner. The court said:

"It is evident that plaintiffs did nothing except put Bader & Co. in possession of the coupons for a legitimate purpose, which purpose could not have been effected without such possession. Like possession and like apparent ownership necessarily existed in all the cases quoted by us, otherwise the sale or pledge could not have been made."

In conclusion, the court makes it plain that past-due negotiable instruments are treated and considered as all other personal property. The court said:

"It must be admitted that the principle invoked by us, in its application to transfers, not only of past due negotiable instruments but of all personal property, by the possessors and apparent owners thereof, undoubtedly exposes innocent dealers to great danger of fraud and wrong; yet there are many equitable considerations which weigh equally in its favor; and the law, as it exists, has been established, after a full and fair consideration of the equities on both sides. Arguments against

its wisdom and propriety should be addressed to the legislative, not to the judicial discretion."

The principles involved in this case are sustained in the cases of Frantz & Co. v. J. S. Winehill & Co., 124 La. 680, 50 So. 650; Russell v. Kunemann, 19 La. Ann. 517; and Moore v. Lambeth, 5 La. Ann. 66.

It has been urged by appellant that the doctrine advanced by appellee, which might be the law of other states of the Union, is not the law of Louisiana; that Louisiana law is founded on the Roman law and the Code Napoleon of France. He does not, however, point out the distinction and in what respect our law differs. In France, under article 2279, C. N., the possession and title of movable property go together ("possession vaut titre"). That doctrine has never prevailed in Louisiana. Holton & Winn v. Hubbard & Co., 49 La. Ann. 715, 22 So. 338.

In the case of Freeport & Tampico Fuel Oil Corporation v. Lange, 157 La. 217, 102 So. 313, 316, the Supreme Court of this state reviewed the jurisprudence of this state, as well as a number of other states of the Union, and affirmed the doctrine of the cases of Campbell v. Nichols, 11 Rob. 16; Moore v. Lambeth, 5 La. Ann. 66; and in effect, overruled the case of Conner v. Hill & Co., 6 La. Ann. 8, which latter case is relied upon by defendant. In that opinion, the court said:

"It is said, however, that plaintiff should not recover, because, by delivering the brass and scrap iron to Snider in the presence of one of defendant's employees, this vested Snider with the appearance of ownership. But in our opinion the act— that is, the delivery—should not be given that effect, even viewing the employee as the representative of defendant. To give it that effect would be equivalent to holding that if a person should deliver property to one, in the presence of another, with no intention of transferring title to the one to whom delivery is made, as for instance, where possession is delivered for purpose of storage, the person witnessing the delivery, if ignorant of its purpose, would be protected in purchasing from the one receiving delivery. This, as we have seen, is clearly not the law."

This statement of the court completely covers the case before us. Defendant's agent was present and saw plaintiff deliver to Cobb the four bales of cotton for the purpose of having same stored. Defendant was ignorant of the purpose of plaintiff in delivering possession to Cobb. He purchased the cotton from Cobb and asked to be protected in his purchase. Under the jurisprudence of this state and the authorities heretofore cited, he is not protected. It is clear that defendant acquired no right to the four bales of cotton, his vendor having none himself, nor any authority to convey any. Cobb was only intrusted with the cotton for the purpose of storing it. He was vested with mere possession of the cotton; no right of property ever passed to him. The sale, therefore, he made of plaintiff's cotton was null. Civ. Code, art. 2452; Russell v. Favier, 18 La. 589, 36 Am. Dec. 662.

Defendant relies on the case of Loeb v. Collier, 131 La. 377, 59 So. 816. In that case, the court was dealing with the question of privilege on crops, as furnisher of supplies, and not with the ownership of crops. The case is not applicable here.

Defendant also cites Weld v. Donlin, 13 La. 460. It is not in point. The court in that case only decided one question. Tankersley & Dench sold to plaintiff some cotton and later sold the same cotton to defendant. The case was decided on the question of delivery, and the court held that the cotton when sold to plaintiff was

actually delivered to him. Therefore, he had purchased from the rightful owner a movable and had taken actual possession of it, and that the sale by plaintiff's vendor to defendant at a later date of the same property then in possession of plaintiff was a nullity, although defendant acquired actual possession of the property after purchasing it.

Counsel for defendant say in brief:

"Having shown that defendant purchased this cotton in good faith from a merchant, we now cite article 3507, C. C., which holds that even had a stolen article been bought from a dealer or one in the habit of selling such things, the owner of the thing could not obtain restitution of it without returning to the purchaser the price it cost him. Certainly the law does not intend to offer more protection to a negligent, careless individual, who deliberately places his property in the hands of a merchant and permits it to be sold, than it offers to one whose goods have been stolen from him and then sold by a merchant. If in the latter case, the owner could not recover without returning to the purchaser in good faith the amount it cost him, certainly in the former case he should not be allowed to do so. And yet that is what the judgment of the lower court in this case would do."

Counsel are not correct in their interpretation of the articles of the Code. This question arose in the case of Campbell v. Nichols, supra, and the court said:

"But his counsel contends that, under the following article, 3473 (now 3507), he is entitled to claim of the plaintiff the price he paid for the carriage, having bought it from a person in the habit of selling such things. We think otherwise. In the first place, the article relied on speaks of things stolen or lost, which form an exception to the rule laid down in the preceding article, which gives title to the possessor of a chattel after a possession of three years; but even with regard to things stolen or lost, it results from the two articles (3472 and 3473), which have a clear reference to each other, that it is only after a possession of three years that the purchaser can demand the price he paid of the rightful owner who claims his property. Such was the construction put by this court upon those articles in the Code of 1808. Davis v. Hampton, 4 Mart. (N. S.) 288; Code 1808, p. 488, Arts. 75 and 76."

Defendant finally contends that the plaintiff is estopped by his actions. We do not think plaintiff's actions justify the plea, for the reasons heretofore given.

The judgment of the lower court is correct, and it is therefore ordered, adjudged, and decreed that it be affirmed, with costs.