186 So. 593

CLEVELAND v. WESTMORELAND et ux.
SAME v. BUTLER.

No. 35056.

Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

J. W. Gerrald, of Houston, Tex., and Jack & Jack, of Shreveport, for appellant.

J. P. Wallace, of Shreveport, for appellees.

O'NIELL, Chief Justice.

Mrs. Loraine G. Cleveland brought suit against J. M. Westmoreland and his wife

to annul a transfer of ¹⁄₁₂₈ interest in the mineral rights in 57.81 acres of land belonging to Mrs. Cleveland. At the same time Mrs. Cleveland sued Lewell C. Butler, an attorney at law, to annul a similar transfer made to him. Both transfers were made by Mrs. Cleveland's mother, Mrs. Mamie Gerald, acting as agent for Mrs. Cleveland under a power of attorney, —the two transfers being made at the same time. The transfer to Mr. and Mrs. Westmoreland was made in consideration for services rendered by them in procuring for Mrs. Cleveland a very profitable oil lease on her 57.81 acres of land. The transfer to Mr. Butler was made in consideration for professional services rendered by him, as attorney for Mrs. Cleveland's agent, in connection with the lease. The cause of action alleged in both suits is that the power of attorney, under which the agent acted, did not authorize the agent to transfer to the defendants, or to any one else, any mineral interest in the land, "except for good and valuable consideration in the form of cash, or its equivalent, or property." The cause of action, alleged more specifically in the suit against the Westmorelands, is that the transfer which the plaintiff's agent made to them was intended to be a gift, or gratuity, "and that no consideration within the intent and meaning of the power of attorney" was paid or given by the Westmorelands. The cause of action alleged more specifically in the suit against Mr. Butler is that the power of attorney did not authorize the agent to convey to Mr. Butler or to any one else a mineral interest in the land "for legal or other services rendered." In that connection the plaintiff admits in her petition that Mr. Butler was employed as attorney by plaintiff's agent to perform the legal services in connection with the leasing of the land, and that he performed the services, and that for his fee the agent paid him $500 in cash and made the deed to him for the ¹⁄₁₂₈ mineral interest in the land.

The Westmorelands, in their answer to the suit, averred that the services which they rendered in procuring the lease were worth the ¹⁄₁₂₈ interest in the mineral rights, and that the power of attorney authorized the agent to make the transfer of the interest in the mineral rights, instead of paying in cash, for the services rendered. Mr. Butler, in answer to the suit against him, averred that the professional services which the plaintiff admitted he was employed to render and did render were worth the ¹⁄₁₂₈ interest in the mineral rights, plus the $500 paid to him in cash, and that the power of attorney authorized the agent for Mrs. Cleveland to make the transfer of the interest in the mineral rights, in addition to paying the $500 in cash. The defendants pleaded in their answers, respectively, that Mrs. Cleveland was informed by her agent, on the next day after the transactions were made, of all of the details of the transactions, and that, by receiving and retaining the benefit of the transactions, without making any complaint during a period exceeding two years, and until the value of the mineral interests in the land was increased greatly by the discovery and production of oil on the land, Mrs. Cleveland ratified the acts of her agent.

The two suits, being alike in all essential particulars, were by consent of the parties consolidated and tried as one suit. The trial resulted in judgments for the defendants, respectively, rejecting the plaintiff's demand, in each suit. She is appealing from the judgments.

The evidence leaves no doubt that the Westmorelands rendered valuable services to the agent for Mrs. Cleveland, in procuring a lease which was far more advantageous to Mrs. Cleveland than any lease the agent could procure. Mrs. Cleveland received a bonus of $500 per acre, or $28,-905 of which one half, or $14,452.50, was paid in cash when the lease was made, and the other half was paid when oil was discovered and produced by the lessee,—a year and four months after the lease was made. The contract of lease was signed on September 10, 1935, and was placed in escrow, in a bank, pending an examination of the title to the land. The attorney who examined the title for the lessee required certain corrections to be made in the recorded titles; which matters were attended to by Mr. Butler and were completed on September 19, 1935. On that morning, Mrs. Gerald, as agent for Mrs. Cleveland, called at the office of Mr. Butler, in response to his request, and was informed by him that all negotiations for the lease were completed, and that the contract would be delivered to the lessee and the $14,452.50 would be paid to her that afternoon. At the same time Mr. Butler informed Mrs. Gerald that his fee would be $500 plus $\frac{1}{128}$ of the mineral rights, which would entitle him to $\frac{1}{16}$ of the $\frac{1}{8}$ royalty to be paid by the lessee. At the same time, Mr. Butler suggested that Mrs. Gerald, as agent for Mrs. Cleveland, should make a deed to Mr. and Mrs. Westmoreland for $\frac{1}{128}$ of the mineral rights, which would entitle them to $\frac{1}{16}$ of the $\frac{1}{8}$ royalty,—in compensation for the services rendered by the Westmorelands. Mrs. Gerald replied that she would think over the matter; and when she returned to Mr. Butler's office that afternoon, before delivering the contract of lease to the lessee, or receiving the $14,452.50 bonus, she informed Mr. Butler that she was willing to pay him the $500 and make a deed to him for the $\frac{1}{128}$ interest in the mineral rights, in compensation for his services, and was willing also to make a deed to Mr. and Mrs. Westmoreland for the $\frac{1}{128}$ interest in the mineral rights, in compensation for the services which they had rendered in procuring a lessee, ready, willing and able to pay such a large bonus. Mrs. Gerald preferred to make the deed for $\frac{1}{128}$ of the mineral rights than to pay the commission of 5 per cent of the $14,452.50 bonus, or $721.50 in cash. The 5 per cent, evidently, was calculated on the sum of $14,430, instead of $14,452.50; from which it seems that a deduction of $22.50 was made, for some reason or purpose which is not explained,—and is not important. The consideration expressed in each of the two deeds, therefore, for the $\frac{1}{128}$ interest in the mineral rights, was $721.50 cash; which was the same in effect as if Mrs. Gerald had paid the 5 per cent commission in cash and had received it back in payment for the $\frac{1}{128}$ interest in the mineral rights.

The main defense is the contention that the power of attorney which Mrs. Gerald held did authorize her to make the deed to Mr. and Mrs. Westmoreland, and the deed to Mr. Butler, without actually receiving, in either instance, the $721.50 in cash. The authority that was conferred upon the agent by the power of attorney is expressed in the instrument thus:

" * * * to transfer, sell, convey and deliver, or to lease for oil, gas, and other minerals, in whole or in part, whether by sale or lease of lands, or minerals or royalties, the following described property. [Here is the description of the 57.81 acres of land].

"And particularly to sell or lease, in whole or in part, whether by sale of minerals or lease of lands, to such person, firm or corporation, and under such terms and conditions, as said attorney in fact may deem proper; to sign any form of sale or release agreement she may see fit; to receive and receipt for any consideration stipulated therefor.

"Hereby giving and granting unto his [meaning her] said agent and attorney full power and authority to do and perform all and any act whatsoever requisite and necessary to be done in the premises, as fully, to all intents and purposes, as he [meaning she] might or could do if personally present," etc.

Our opinion is that the authority granted and expressed in this power of attorney is broad enough to include the authority to make a conveyance of a mineral interest in the land for any fair and adequate consideration,—and not only for a cash consideration. We refer particularly to the expression of the authority "to receive and receipt for any consideration stipulated therefor." We refer also to this admission or allegation in the plaintiff's petition in both suits,—viz: "Petitioner did not authorize Mrs. Mamie Gerald, by virtue of said power of attorney * * * to convey to defendants, or to anyone else, any portion of said property, or mineral interest therein, except for a good and valuable consideration, in the form of cash, or its equivalent." That expression is, virtually, an admission by the plaintiff that the agent for Mrs. Cleveland had authority to convey to the defendants, or to anyone else, a portion of the mineral rights in the 57.81 acres of land, not only for a cash consideration, but for any other consideration of fair and proportionate value. At the beginning of the trial of the case, the admission was made by the parties to the two suits, and was entered on the minutes of the court, that the $\frac{1}{128}$ interest in the mineral rights was worth $721.50 at the time when the agent for Mrs. Cleveland made the two transfers which are now in contest, and that the same interest in the mineral rights was worth not less than $3,000 at the time of the filing of the suits. At the time when the lease was made, and when the transfers were made to the Westmorelands and to Mr. Butler, the nearest producing oil well was the discovery well in the Rodessa oil field, and that well was nearly three miles from Mrs. Cleveland's 57.81 acres of land. The first producing well on Mrs. Cleveland's 57.81 acres of land was brought in in December,

1937, and the second well was brought in on the 31st day of December, 1937, or the 1st day of January, 1938. This suit was filed on the 23rd day of February, 1938; which was two years and five months after the contract of lease and the transfer to the Westmorelands and the transfer to Mr. Butler were made. Meanwhile, Mrs. Cleveland had accepted and retained the large bonus, and afterwards accepted and retained her share of the ⅛ royalty from the two wells; and, notwithstanding Mrs. Cleveland, who lived in El Paso, Texas, visited the Westmorelands, in Shreveport, about nine months after the lease was made, and visited with them at the home of Mrs. Gerald, in Texarkana, Arkansas, about a year and nine months after the lease was made, Mrs. Cleveland did not repudiate the transfer which her agent had made to the Westmorelands, or the transfer to Lewell C. Butler, until oil was discovered by the lessee on Mrs. Cleveland's land. If the drilling had produced a dry hole the 1/128 interest in the mineral rights would have been worthless. The Westmorelands tried to sell their 1/128 interest in the mineral rights for $500; and in fact they accepted an offer of $500 for their rights, about a year and nine months after they acquired the rights; but the sale was not consummated because the prospective buyer had some doubt about the way in which the 1/128 interest was described in the deed. Mrs. Cleveland was asked then to sign an instrument clarifying the description of the extent of the Westmorelands' right; but she declined to sign the instrument. She also became ap-

prehensive lest the fractional interest, which was said to entitle the Westmorelands to 1/16 of the ⅛ royalty, meant 1/16 of the mineral rights, instead of 1/128 of the mineral rights. But Mrs. Cleveland did not, even then, dispute that the Westmorelands were entitled to the 1/128 interest in the mineral rights.

The facts which we have related show that there was no element of fraud or imposition upon Mrs. Cleveland in the transfers which she now complains of. There is no allegation in Mrs. Cleveland's petition, in the suit against Mr. Butler, that could be construed as an accusation of fraud or imposition. The only allegation that might be so construed in the petition in the suit against the Westmorelands is the allegation that the transfer made by Mrs. Cleveland's agent to the Westmorelands was intended by the agent and by the Westmorelands to be a gift, or gratuity. But that allegation is greatly modified by the explanatory allegation that there was "no consideration within the intent and meaning of the power of attorney." The evidence shows that the services rendered by the Westmorelands, for which they received the 1/128 interest in the mineral rights, was a valuable and an adequate consideration within the intent and meaning of the power of attorney. The Westmorelands spent three months in their automobile with Mrs. Gerald, calling upon prospective lessees, until they and Mr. Butler obtained a lease which was worth several times as much to Mrs. Cleveland as one which Mrs. Gerald would have made if she had not had the assistance of the Westmorelands and Mr. Butler.

According to article 1900 of the Civil Code, if the cause or consideration stated in a contract is not the true cause or consideration for which the contract was made, the contract is yet valid "if the party [against whom a want of consideration is pleaded] can show the existence of a true and sufficient consideration." And it has been decided that the true cause or consideration for the making of a contract may be shown by parol evidence if the cause or consideration stated in the contract was not the true cause or consideration. Jackson v. Miller, 32 La.Ann. 432; Levert, Burguieres & Co. v. Hebert, 51 La.Ann. 222, 25 So. 118; Guaranty Bank & Trust Co. v. Hunter, 173 La. 497, 137 So. 904.

It is pointed out in the brief for the appellant that the Westmorelands were not engaged in the brokerage business, and were not licensed to conduct such business. We have given due consideration to that in determining whether it was intended that the Westmorelands should be compensated for their services. We have considered also, in that connection, that Mr. Westmoreland is a brother of Mrs. Gerald and, of course, an uncle of Mrs. Cleveland. Notwithstanding these facts and circumstances tending to show that it was not intended that the Westmorelands should be compensated for their services, there is a preponderance of evidence in their favor. The appellant does not contend that the want of a broker's license would be a cause for rescinding the deed by which the Westmorelands were compensated for their services. In fact there is no reference to that in the plaintiff's petition.

Mrs. Cleveland's tacit approval, for more than two years, of the transfers made by her agent to the defendants, did not constitute an estoppel, because the reliance of the defendants upon the acquiescence of Mrs. Cleveland did not prejudice the defendants in any way. In fact they profited greatly by the fact that the transfers to them were not repudiated—if they could have been repudiated successfully—by Mrs. Cleveland. But the defendants have no need for a plea of estoppel in these suits. If the transfers made to them by the agent for Mrs. Cleveland needed ratification, the plea that the transfers were ratified by Mrs. Cleveland would be well founded. In Mechem on Agency, 2d Ed., Vol. 1, Chap. VII, § 349, p. 261, the author marks the distinction between estoppel and ratification, thus:

"Ratification, moreover, differs from estoppel, though they are often very closely associated. Estoppel requires that the party alleging it shall have done something, or omitted to do something, in reliance upon the other party's conduct, by which he will now be prejudiced if the facts are shown to be different from those upon which he replied. Ratification requires no such change of conduct or prejudice: if the principal ratifies, the other party may simply avail himself of it. As soon as ratification takes place, the act stands as an authorized one, and not merely as one whose effect the principal may be estopped to deny. If there be ratification, there is no occasion to resort to estoppel."

The judgments appealed from are affirmed.