24 So.2d 75

### PACKARD FLORIDA MOTORS CO. v. MALONE.

No. 37747.

Nov. 5, 1945.

Preston L. Savoy, of Lake Charles, for appellant.

Moss & Graham, of Lake Charles, for plaintiff and appellee.

ROGERS, Justice.

The Packard Florida Motors Company, a corporation doing business in the City of Jacksonville, Florida, brought this suit to be recognized as the owner of a certain Cadillac automobile in the possession of Cleve Malone, a resident of the Parish of Calcasieu. Plaintiff had the automobile sequestered, and the defendant obtained its release on bond. Defendant filed an answer and a plea of estoppel. There was judgment in the district court in favor of plaintiff and defendant has appealed.

The facts are not disputed. Plaintiff purchased the automobile involved in this case from the Knickerbocker Operating Company, Inc., in the City of New York on October 5, 1943, and signed an application to the Motor Vehicle Commissioner of the State of Florida for a certificate of title thereon on October 11, 1943. This is shown by the certificate of Henry J. Drig-

gers, Motor Vehicle Commissioner of Florida, dated February 29, 1944. Attached to the certificate are three photostatic copies of documents evidencing the sale of the automobile from the Knickerbocker Operating Company, Inc., to the plaintiff, Packard Florida Motors Company. Pursuant to the application, the Commissioner of Florida, on December 3, 1943, issued to plaintiff its certificate of title No. 1691391 covering the automobile.

On November 27, 1943, one Carl R. Manderback inspected the automobile in plaintiff's place of business in Jacksonville with a view of purchasing it, and he gave plaintiff a check drawn on a bank in Jacksonville to represent the purchase price, with the understanding and agreement that no delivery of the automobile would be made or the sale become effective until the check had been paid and plaintiff had received the purchase price. After receiving the check from Manderback, plaintiff inquired as to the status of the check and learned that Manderback had no funds on deposit in the bank and that his check could not be honored although he had deposited certain checks drawn upon banks domiciled outside the State of Florida. On or about November 28, 1943, while waiting for the clearing of Manderback's check, which had been delivered to plaintiff, but before it was ascertained that the checks Manderback had drawn on outside banks were forgeries, Manderback appeared at plaintiff's place of business and obtained plaintiff's permission to drive the automobile to Jacksonville Beach, approximately 18 miles from the City of Jacksonville, for

the purpose of inspecting a house which he stated he intended to purchase or rent. At that time plaintiff was not informed that the checks left by Manderback with the local bank for collection were forgeries and plaintiff was not so informed until it had permitted Manderback to use the automobile to drive to Jacksonville Beach for the particular purpose hereinabove stated.

After leaving plaintiff's place of business in Jacksonville, Manderback drove the automobile out of the State of Florida and later sold it to Robert Burns, an officer in the United States Army stationed at the Army Air Base in the City of Lake Charles, Louisiana. Burns in turn sold the automobile to Sam Smith, a resident of Calcasieu Parish, and later Smith sold the automobile to Cleve Malone, the defendant in this suit.

Defendant claims the ownership of the automobile by virtue of the bills of sale delivered by Manderback to Burns, by Burns to Smith, and by Smith to defendant. The papers evidencing the transfer from Manderback to Burns were apparently in order, although it would seem to be clear that they were forged by Manderback. The papers evidencing the transfer by Burns to Smith and by Smith to defendant were legal and regular in every respect.

According to the facts disclosed by the record, no sale of the automobile had been made to Manderback, nor was plaintiff advised, when Manderback obtained plaintiff's permission to use the automobile for the sole purpose of driving to Jacksonville

Beach to examine a house he contemplated buying or renting, that the checks which he had deposited in the local bank were forgeries. Manderback had previously delivered to plaintiff a check to represent the purchase price of the automobile, but he had been advised by plaintiff that the automobile would not be delivered to him and no sale thereof would be made until his check had actually been paid, which the local bank advised plaintiff it could not do until the checks Manderback had deposited for collection had been cleared. These checks were later found to be forgeries. Manderback was arrested in the City of New Orleans by operatives of the Federal Bureau of Investigation, where at the time of filing the suit he was being held for violating the criminal laws of the United States.

Plaintiff predicates its action upon Article 2452 of the Civil Code, which provides that a sale of a thing belonging to another is null.

■ According to the admitted facts, plaintiff never made any sale of the automobile to Manderback. A complete title of ownership does not pass to the purchaser at a cash sale until he has paid the purchase price. Plaintiff never received the purchase price and hence was not divested of its ownership in the automobile. Plaintiff merely permitted Manderback to use the automobile for the particular purpose of driving to Jacksonville Beach to inspect a house he professed it was his intention to purchase or rent. Manderback was not given control of the automobile for any other purpose. Manderback drove the au-

tomobile out of Florida, an act which, it is admitted, constituted larceny under the laws of that state. He sold the automobile to Burns in Louisiana. That sale was null. It conveyed no right to the purchaser. Since Burns had no title to the automobile he could not sell it to Smith and likewise Smith, not having any title to the automobile, could not sell it to the defendant.

■■ Under the general rule announced in Article 2452 of the Civil Code no one can be divested of his property without his consent, and, consequently, an innocent third person under a defective title can not hold against the true owner. We have not been furnished with any authority which would justify us in taking the present case out of the general rule imposing upon the transferee the hazard of his author's title, which requires the owner's consent to the divesture of his title. Although acting in good faith neither Burns, Smith nor defendant, as we have shown, actually ever had title to the automobile.

■■ It appears that the principal defense set up by defendant is embraced in the plea of equitable estoppel, resting upon the well known legal principle that where one of two innocent parties must suffer loss through the fraud of another the burden of the loss should be imposed upon him who most contributed to it. But equitable considerations can not be permitted to prevail when in conflict with positive written law. Civ.Code, Art. 21; Lancaster v. Dunn, 153 La. 15, 95 So. 385; Fed-

eral Land Bank v. Rester, 164 La. 926, 114 So. 839.

Our positive written law declares that the sale of a thing belonging to another is null, and that the ownership of movable property can not be acquired by possession unless that possession has been maintained for a period of ten years if the thing was stolen or lost. Civ.Code, Arts. 2452, 3506, 3509. That is the express law regulating the rights of the parties, and according to which they were properly determined by the judge of the district court.

For the reasons assigned, the judgment appealed from is affirmed.