This suit grows out of a disagreement between the vendor and the vendee of real estate concerning the question of which of them is entitled to the proceeds of an insurance payment, which was made for storm damage which was sustained by the building between the time of the execution of the contract to sell and the passing of the notarial transfer of title.
The contract was entered into on September 5, 1947. Under it James R. Sutton agreed to buy and Henry H. Cuppay, Sr., agreed to sell, for $4200 cash, a small piece of improved real estate on Bertrand Street in New Orleans. The contract provided that the act of sale would be passed on or before October 15, 1947. As a matter of fact, the transfer of title was not executed until November 29, 1947, but the delay is of no importance in this litigation.
Between the time at which the contract was entered into and the time at which the act of sale was passed, the terrific hurricane of September, 1947, occurred and the building sustained damage. The owner, Cuppay, had previously secured a policy of storm insurance. When the parties met in the office of the notary public and the act of sale was presented for execution, it contained no reference to the storm damage, nor did it contain any stipulation concerning the repair of the damage, nor the distribution of the proceeds of the insurance policy should any collection be made. The parties discussed the question of the damage and then executed the act of sale.
On August 2, 1948, Sutton brought this suit in the First City Court of New Orleans, alleging that, at the time of the signing of the act of sale, it had been verbally agreed between himself and Cuppay that the act would be executed just as it had already been prepared and that Cuppay should proceed with his claim against the insurance company for storm damage and would turn over to Sutton the proceeds of any settlement which he might effect with the insurance company. Sutton alleged also that Cuppay subsequently collected $271 from the insurance company, which represented payment for the storm damage and that he, Cuppay, had failed and refused to turn the said sum over to him.
To this petition Cuppay filed an exception of no right or cause of action based on the contention that since there had been executed a written agreement of sale, no verbal evidence of any prior agreement not referred to in, or made part of the act of sale, could be admitted and that, therefore, the petition, since it was based entirely on such a verbal agreement, showed no cause of action.
At the same time at which the exception was filed, Cuppay, as required by the rules of the First City Court of New Orleans, filed answer in which he admitted the sale of the property and that prior to its sale it had sustained damage, and that he had collected from his insurance company the sum of $271. He denied that there had been any agreement at the time of the signing *Page 108 
of the act of sale under which he had agreed to turn over the insurance collection to Sutton.
Though there is nothing in the record to show it, apparently the exception was overruled. There was judgment dismissing plaintiff's suit. He has appealed.
In the oral argument before us and in his brief, counsel for defendant strenuously urges us to maintain the exception and to dismiss the suit on the exception. He directs our attention to Article 2236 of the Civil Code, which reads as follows:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."
Counsel says that became of this acticle, no evidence of any verbal contract, in any way changing or contradicting the terms of the written act should have been admitted.
We think it evident that counsel intended to call attention to Article 2276 of the Civil Code, which reads as follows:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
Article 2236 is not concerned with the question of whether or not there may be admitted testimony of any verbal agreement, the sole purpose of that article being to provide that an authentic act constitutes full proof of what is contained in it, whereas Article 2276 prohibits the introduction of parol evidence "against or beyond what is contained in the acts * * *."
We think it well settled that, as between the parties themselves, the true consideration for the making of a written contract may be shown orally. In Cleveland v. Westmoreland,191 La. 863, 186 So. 593, 596, the Supreme Court discussed this question and said:
"According to article 1900 of the Civil Code, if the cause or consideration stated in a contract is not the true cause or consideration for which the contract was made, the contract is yet valid 'if the party (against whom a want of consideration is pleaded) can show the existence of a true and sufficient consideration.' And it has been decided that the true cause or consideration for the making of a contract may be shown by parol evidence if the cause or consideration stated in the contract was not the true cause or consideration. Jackson v. Miller, 32 La. Ann. 432; Levert, Burguieres Co. v. Hebert, 51 La. Ann. 222, 25 So. 118; Guaranty Bank Trust Co. v. Hunter,173 La. 497, 137 So. 904."
In IV Louisiana Law Review, at page 388, there is a discussion of this question, and in it the author shows that in spite of Article 2276 of the Civil Code, because of Article 1900 of the Code, "the courts have generally admitted oral testimony to show actual consideration * * *." And on page 389, the author of the article quotes from Delabigarre v. Second Municipality of New Orleans, 3 La. Ann. 230, to show that the real or actual consideration for the making of a written contract — which in that case was a contract of sale — "may be shown by (any) legal evidence, oral or written, and * * * evidence adduced for that purpose never can be considered as contradicting the act."
See, also, Taylor v. Taylor, 208 La. 1053, 24 So.2d 74.
When Sutton and Cuppay met in the office of the notary public, it became apparent that because of the damage which had been sustained Sutton could either retire from the contract, or could insist that the damage be repaired. We see no reason why they could not agree that in consideration for Sutton accepting the property in its then condition, he would receive such insurance payment as might be made. When this was agreed to, the agreement became binding on the parties. Parol evidence of it thus was admissible under the authorities cited. Necessarily then it follows that the exception is not well founded.
When we come to consider the evidence, we find it overwhelmingly in favor of plaintiff, Sutton. It leaves no doubt at all that when the parties met to execute the act of sale, the question of the storm damage, which had been sustained, was discussed, and it leaves no doubt at all that there was an agreement concerning this *Page 109 
storm damage. Cuppay would have us believe that when he and Sutton met in the office of the notary public, he told Sutton that there was "damage to the roof and the side of the house", and that he asked him "if he wanted to take the insurance policy over * * *." He said that Sutton said, "No." And that he then asked Sutton, "What do you want me to do?" and that Sutton told him to make the repairs and that he did so.
When we read all of this testimony of Cuppay, we are certain that what he meant was that he offered to have Sutton take over the storm damage insurance policy and claim, and that Sutton refused to do so and authorized him, Cuppay, to make the repairs. Sutton says that when they met, he asked Cuppay, "What about the damage?" And that Cuppay told him that the insurance company had offered a settlement which was not satisfactory and that he was negotiating with the insurers further, and Sutton says that the notary public suggested that they settle matter, and that they did so.
Mr. Walter F. Weidig, the real estate agent, says that the agreement was that Cuppay would proceed with his claim against the insurance company and would pay over to Sutton the amount received. In fact Mr. Weidig arranged with a contractor, Fred A. Evans, to have him make an estimate of the storm damage to be used in connection with the claim of Cuppay against the insurance company, and the evidence shows conclusively that this estimate was used and that based on it, the insurance company paid Cuppay $271. This estimate as prepared showed a total of $285.50, but the insurance company deducted $14.50 for depreciation and paid the balance.
It is very evident that little, if any of the damage which was sustained by the property, as a result of the storm, was repaired by Cuppay. He says that his son repaired some of the damage and that he paid his son $50, and that the remaining damage was repaired by Oswald Frey, and that he paid Frey $90. That is all that Cuppay claims to have expended in making repairs necessitated by damage, for which he admits he collected $271. The tenants, who were in the property, however, stated that practically no repairs were made to the property, and that certainly no repairs justifying the expenditure of as much as $141 claimed by Cuppay were made.
Cuppay admits that he made no repairs whatever to the interior of the house, and he says that the reason no repairs were made was that no damage had been sustained by the interior, and yet in his settlement with the insurance company, he received at least $80 because of damage to the interior.
J. D. Kavanaugh, who seems to have been employed by Sutton, says that at the request of Sutton he called on Cuppay at least six times, and that Cuppay repeatedly told him that as soon as he received payment from the insurance company he would turn the money over to Sutton.
We have no doubt whatever that there is no truth at all in Cuppay's testimony that when the act of sale was passed, the agreement which he reached with Sutton provided that he, Cuppay, would make the repairs and would be permitted to retain the amount which he might receive from the insurance company.
Since the agreement, proof of which we find to be admissible, showed that the amount of the collection was to be turned over to Sutton, it is obvious that the judgment against Sutton must be reversed.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, James R. Sutton, and against Henry H. Cuppay, Sr., in the sum of $271, with legal interest from judicial demand, and for all costs.
Reversed. *Page 110