89 So.2d 369

## JEFFREY MOTOR COMPANY

v.

## A. T. HIGGINS

and

**Arthur Dabbs d/b/a Arthur Dabbs Auto Sales.**

No. 42629.

June 11, 1956.

Rehearing Denied June 29, 1956.

Oliver P. Carriere, Racivitch, Johnson, Wegmann & Mouledoux, by Warren E. Mouledoux, New Orleans, for defendant-appellant.

Tucker & Schonekas, New Orleans, for plaintiff-appellee.

VIOSCA, Justice ad hoc.

Defendant, A. T. Higgins, Jr., appeals from a judgment which recognized plaintiff, Jeffrey Motor Company, to be the owner of a 1953 Oldsmobile Automobile, Model 98, ordered A. T. Higgins, Jr., to return the automobile to plaintiff, and, alternatively, ordered A. T. Higgins, Jr., to pay plaintiff the sum of $2,650, with legal interest.

Judgment by default was alternatively rendered in a like amount against the defendant, Arthur Dabbs, d/b/a Arthur Dabbs Auto Sales. Dabbs did not appeal.

The facts of record are that on or about October 1, 1953, Arthur Dabbs, a New Orleans used car dealer, visited the Jeffrey Motor Company in Linden, Alabama. He negotiated with one of the partners, Clyde G. Jeffrey, for the purchase of several automobiles. The purchase included the 1953 Oldsmobile herein involved, for which a price of $2,650, cash on delivery to New Orleans, was agreed upon.

E. E. Ross, a retail salesman for Jeffrey Motor Company, drove the Oldsmobile to New Orleans on Friday, October 2, 1953, and two other cars were driven to New Orleans at the same time for delivery to Dabbs. A fourth car made the trip to return the drivers to Alabama. When Ross reached Slidell, Louisiana, he telephoned Arthur Dabbs Auto Sales Company, and, by arrangement, Edward Dabbs, son of Arthur Dabbs and an employee of the company, met Ross at Martin's Cafe on Louisiana Highway No. 90. After discussion, Edward Dabbs paid Ross for the Oldsmobile by draft, dated October 2, 1953, payable two days after date, drawn by Arthur Dabbs Auto Sales on the Louisiana Bank & Trust Company, Carrollton Branch, New Orleans, Louisiana, to the order of Jeffrey Motor Company for the sum of $2,650. Ross had been instructed to receive cash,

but he did not know what a draft was and considered it the same as cash. He delivered the Oldsmobile to Edward Dabbs and turned over to him a bill of sale and the Alabama registration certificate.

Ross returned to Linden, Alabama, and the next morning, October 3, 1953, he turned the draft over to his employer, who deposited it in the Sweetwater State Bank, Sweetwater, Alabama, on October 8, 1953. The draft arrived at the Selma National Bank, Selma, Alabama, on October 10, 1953, and was returned unpaid to the Sweetwater State Bank on October 20, 1953, and charged to the account of Jeffrey Motor Company. Dabbs' bank account was never large enough during the month of October, 1953, to cover the draft.

Dabbs applied for the necessary Louisiana title certificate for the Oldsmobile, and on October 7, 1953, he sold the car to A. T. Higgins, Jr., for the trade-in of his old car and $1,500 cash. Higgins accepted the Oldsmobile and surrendered his old car to Dabbs on October 7, 1953, and he paid the $1,500 cash on October 8, 1953. A Louisiana certificate of title was issued to Higgins on October 22, 1953.

The record is uncontradicted that plaintiff took no action in the matter until the draft was returned unpaid. He then called Dabbs, who told him that he could not pay it. Criminal charges were preferred with the New Orleans District Attorney, and

Dabbs was convicted under LSA–Revised Statutes 14:67. The instant suit was filed on November 4, 1953, for the return of the Oldsmobile or a money judgment.

Dabbs and Higgins each filed exceptions of vagueness to plaintiff's petition, and Higgins also filed exceptions of lack of verification and no cause of action. We believe that the trial judge was correct in overruling all exceptions.

Plaintiff alleges that, under Article 2452 of the LSA–Civil Code, which provides that the sale of a thing belonging to another is null, it is entitled to the return of the Oldsmobile or its sale price. It argues that no title passed to Dabbs, and, accordingly, none passed to Higgins, and that since Jeffrey Motor Company was an innocent party it should not have to suffer the loss. In its assertion that Dabbs sold stolen property, acquired no title to it, and could convey no title to Higgins, plaintiff relies on Dabbs' conviction of the theft of three automobiles, which included the instant Oldsmobile.

In the case of State of Louisiana v. Dabbs, 228 La. 960, 84 So.2d 601, 603, we affirmed the trial court's ruling which denied a motion to quash the Bill of Information. We held that LSA–R.S. 14:67 [1] (1942) broadened the concept of theft to include all offenses of larceny, embezzlement and obtaining by false pretenses, and thereby abolished the distinction between these common law concepts.[2] Because of the broad definition of theft in LSA–R.S. 14:67, we do not believe that the case of State of Louisiana v. Dabbs, supra, governs this controversy.

LSA–Revised Statutes 14:67 is part of the Substantive Criminal Law of Louisiana, and the broad definition of theft for

[1]. "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."

Under the Reporter's Comment, we find:

"This section has the effect of combining the traditional offenses of larceny, embezzlement, and obtaining by false pretenses. In spite of the tremendously complicated nature of the problem as a matter of historical development, there seems to be absolutely no reason why today the fundamental notion that it is socially wrong to take the property of another, in any fashion whatsoever, cannot be stated as clearly and simply as it has been above. There is eminent theoretical and practical authority for this step. See Stemberg, Criminal Appropriation of Movables—A Need for Legislative Reform (1941) 19 Tex.L.Rev. 300."

[2]. "The theft statute was thus designed to enlarge its scope from that of representations only as a basis for theft by fraud and to extend the concept so as to include fraudulent conduct or practice. The determination of the guilt or innocence of the accused of theft as denounced by LSA–R.S. 14:67 and as charged in the bill of information rested exclusively within the province of the jury."

purposes of criminal prosecution, does not alter the provisions of the Civil Code of Louisiana and other civil statutes relating to sales and the transfer of title. The learned trial judge apparently considered that he was bound by the ruling of the Court of Appeal, Parish of Orleans, in Port Finance Co., Inc., v. Ber; 45 So.2d 404, which applied LSA–R.S. 14:67 to sales in civil proceedings. Insofar as that case conflicts with our opinion herein, it is disapproved.[3]

When Ross submitted the two day draft to Jeffrey on October 3, 1953, Jeffrey was fully cognizant that Ross had not carried out his instructions to receive cash. Jeffrey remained silent, exercising no immediate diligence to secure the return of his car or annul the sale. He did not telephone Dabbs until October 20, 1953, or thereafter (some seventeen days after he

received the draft). Therefore, Jeffrey's actions, in not repudiating the payment by draft payable at a future date, and in depositing the draft in the Sweetwater State Bank for collection, constituted his ratification of Ross' acceptance of the draft and converted the transaction to a credit sale. See Fred G. Jones & Co. v. Sanford, 163 La. 799, 112 So. 726, 727;[4] LSA–C.C. Art. 3010; LSA–C.C. Art. 1840.

The sale to Dabbs was complete when Jeffrey accepted the draft, as there then existed an agreement for the object and for the price thereof.[5] It follows that Dabbs had title and could transfer such title. When Higgins made his payment to the Dabbs Auto Sales on October 8, 1953, his contract with Dabbs was complete. Jeffrey's ratification was, likewise, complete on that date. I. Szymanski v. Plassan, 20 La.Ann. 90.[6]

---

3. No application for writs was made to this Court in that case.

4. " * * * Where an agent exceeds his authority it is the duty of the principal to promptly disavow the agent's authority to bind him, else the principal will be bound. As defendant, when knowledge of the manager's acceptance came to him, failed to disavow the manager's authority to bind him by the acceptance, he became bound thereby, and in the absence of such a disavowal, anything defendant may have added to the order, as accepted by his agent, was not binding on plaintiff, without its consent. * * * "

5. LSA–Civil Code Art. 2456—"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

6. "This Court has held that the agent, who disobeys instructions, renders himself responsible to his principal for the consequence of his acts, but it has also held, under another principle of the law of agency, that whenever an agent has committed a breach of orders, and a principal with a full knowledge of all consequences adopts his acts, even for a moment, he will be bound by them, and it is not necessary that such an assent should be express; it may be inferred from the conduct of the principal. Ward

Counsel for defendant Higgins has urged that plaintiff is estopped by his acts from bringing this action. Since we have held that Jeffrey ratified the acts of his agent, Ross, we do not feel that it is necessary to discuss the doctrine of "Equitable Estoppel." See Cleveland v. Westmoreland (Cleveland v. Butler), 191 La. 863, 186 So. 593, 596,[7] in which case we held that there was no need for a plea of estoppel where there was ratification.

The cases of Fisher v. Bullington, 223 La. 368, 65 So.2d 880; Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75; Freeport & Tampico Fuel Oil Corp. v. Lange, 157 La. 217, 102 So. 313; Overland Texarkana Co. v. Bickley, 152 La. 622, 94 So. 138; Lynn v. Lafitte, La. App., 177 So. 83; Hub City Motors v. Brock, La.App., 71 So.2d 700; Holloway v. A. J. Ingersoll Co., Inc., 16 La.App. 494, 133 So. 819; and Moore v. Lambeth, 5 La.Ann. 66, cited by plaintiff are all inapplicable. In none of them was there a ratification by the vendor, of the unauthorized acts of his agent, after he had knowledge of the facts.

For the reasons assigned, the judgment of the trial court is reversed and set aside, and it is now ordered that plaintiff's suit be dismissed and its demands rejected; plaintiff to pay all costs of both courts.

### On Rehearing

### PER CURIAM.

In its application for rehearing, Jeffrey Motor Company has pointed out that we were in error in stating that judgment by default was alternatively rendered against the defendant Arthur Dabbs, and has asked that a rehearing be granted in order that the case may be remanded to the district court on its alternative demand against Dabbs.

While a preliminary judgment by default was rendered against Dabbs, the record before us does not disclose the confirmation of this judgment by default. The same evidence adduced on the trial of the cause against A. T. Higgins was offered

& Co. v. Warfield, 3 [La.Ann.] 468; Flower v. Downs, 6 [La.Ann. 538] 540.

"And the principal's acts will be liberally construed in favor of a ratification. Flower v. Jones, 7 [Mart.]N.S. [140] 143."

7.  "* * * In Mechem on Agency, 2d Ed., Vol. 1, Chap. VII, § 349, p. 261, the author marks the distinction between estoppel and ratification, thus:

"'Ratification, moreover, differs from estoppel, though they are often very closely associated. Estoppel requires that the party alleging it shall have done something, or omitted to do something, in reliance upon the other party's conduct, by which he will not be prejudiced if the facts are shown to be different from those upon which he relied. Ratification requires no such change of conduct or prejudice: if the principal ratifies, the other party may simply avail himself of it. As soon as the ratification takes place, the act stands as an authorized one, and not merely as one whose effect the principal may be estopped to deny. If there be ratification, there is no occasion to resort to estoppel.'"

on confirmation of default against Dabbs. Apparently the district court has not ruled on the alternative demand against Dabbs.

The judgment appealed from in this case was a judgment against Higgins alone, from which Higgins alone appealed. As the demand against Dabbs is not before us, we are powerless to rule on it. Our decree dismissing plaintiff's suit necessarily was limited to a dismissal of the demands against Higgins. Plaintiff's rights as against Dabbs are in no way limited or affected by our decree in this case.

Rehearing denied.