THOMPSON, J.
 

 This is a suit against the surety on a release bond for $5,000, being for damages done to a drilling rig belonging to the plaintiff while in possession of the principal on the bond.
 

 The plaintiff leased the rig to one Henderson October 10, 1922. The term of the lease was to begin on that date and to end on the completion of the drilling of the well known as the Dixie Lumber Company well No. 1.
 

 The price of the lease was $500 per month, payable in advance on the 10th' day of each month. The lessee agreed, at his own expense, to replace and repair from time to time all such parts of the rig as may be broken, worn out, or damaged, and to keep the same in every respect in good working order and repair.
 

 It was further agreed that, upon the expiration or termination of the lease, the lessee would, at his own expense, break down and dismantle the rig and deliver the same to the lessor at the well before mentioned.
 

 The lessee was to notify the lessor when .the said well was completed or abandoned, in order to terminate the contract and to stop the payments. The lessee was to keep the rig insured at the sum of $5,000 during the continuance of the lease.
 

 It was further provided that the lessee should have the privilige of buying the rig at the price of $5,000, .the first monthly rental to go as a credit in the purchase price, and $2,000 was to be paid on or before October 30, 1922, $1,250 on or before December 10, 1922, and $1,250 on or before January 10, 1922.
 

 The lessee did not avail himself of the option to purchase, and continued to pay the monthly rental up to and including June, 1923. The lessee having defaulted in the rent for July, August, and September, 1923, the plaintiff' brought suit for the three months’ rent, and sequestered the rig. The rig was bonded on September 22, 1923, with the defendant Haynes as surety; the bond being fixe.d at $5,000.
 

 The suit for the three months’ rent went to judgment in favor of the plaintiff on October 29, 1923, which judgment dissolved and canceled the lease and maintained the sequestration.
 

 It is stated, though it does not appear from the record,- that an appeal was prosecuted from said judgment, which suspended the execution of the judgment.
 

 It is clear, however, that the plaintiff did not get possession of the rig until March 18, 1925, and then only through the process of the court.
 

 The lessee continued to operate the rig after he had bonded it, and not only completed the Dixie well, but drilled another one to the depth of 2,500 feet. The lessee paid no rent for the rig after the month of June, 1923.
 

 The trial judge dismissed the suit as in case of nonsuit, upon the theory that the plaintiff had not proven his damages with that degree of certainty required by the law, and that is practically the only defense made-on this appeal.
 

 The issue is therefore one of fact, and’ involves the simple "question as to what was the value of the property when it was bonded, and what was its value at the time the plaintiff regained possession. The difference, if any, is the measure of the surety’s liability.
 

 The legal obligation of the surety was-to deliver the rig in like condition as it was when it was bonded, or to pay whatever
 
 *683
 
 damage to the property that was occasioned by the fault, neglect, or want of exercise of proper care on the part of the principal on the bond.
 

 Neither the principal nor the surety ever offered to deliver the rig to the plaintiff after the judgment was rendered canceling the lease to Henderson, but suffered the rig to remain in the swamp, unprotected and unguarded, and exposed to all conditions of the weather and to the ravages of thieves.
 

 We shall not undertake to refer to the evidence in detail. It is-sufficient to say that the rig, at the time it was leased to Henderson, was worth $5,000.- This is testified to by a number of witnesses, and, indeed, that was the valuation at which Henderson was given the option -to purchase. There is no evidence to show that the rig was not of the same value at the time it was bonded. Henderson agreed to keep it in good repair and working order, and he testified that he did spend about $1,000 in repairs.
 

 In the absence of any contrary showing, the presumption is that the rig remained in like good condition, and was worth as much when bonded as it was when leased to Henderson.
 

 Moreover, Stout testified that the rig was worth $5,000 at the time it was bonded, and the judge fixed the release bond on the basis of that valuation.
 

 It is clearly established that, when the plaintiff recovered possession of the rig through judicial process, some 18 months after it was bonded, it was worth only $1,500. The plaintiff, however, was unable to sell it at that price, and finally sold it as so much junk, to a junk dealer'in Shreveport, for $900.
 

 At least two witnesses besides the plaintiff examined the - rig about the time, or just before, the plaintiff regained possession.
 

 These witnesses made a careful inspection of the rig, and in their evidence give in detail the condition of the various component parts of the rig and the percentage of damage to each of such parts. After this examination and inspection of the rig, the two witnesses testified that it was worth $1,500. These witnesses were oil drillers with long experience in that connection.
 

 They appear to have been fully competent-to determine and fix the value of the rig in question, after a close examination and inspection, such as testified to by them. There was other testimony corroborating that of the two witnesses referred to.
 

 It is true the defendant sought to prove by Henderson and one other that the condition of the rig at the time when the sheriff restored it to the plaintiff was better than when it was bonded, but the effort failed. The great weight of the testimony was to the contrary.
 

 We are unable to see how the damaged condition of the rig could, under the circumstances of this case, have been made more definite and more certain.
 

 The defendant surety is clearly liable for the difference between the value of the rig on the day it was bonded and its value on the day the plaintiff regained possession. This difference amounts to $3,500, for which there should'be judgment.
 

 It is therefore ordered that the judgment appealed from be annulled and reversed, and that there now be judgment in favor of the plaintiff and against the defendant for the sum of $3,500, with 5 per cent, per annum interest from judicial demand, to wit, March 17, 1926, until paid, and that defendant pay all costs.
 

 O’NIELL, O. J., is of the opinion that the judgment of the district court should be affirmed.