JANVIER, Judge.
This is a sequel to another suit bearing the same title which was decided by this Court on March 27, 1950. See Port Finance Co., Inc., v. Ber, 45 So.2d 404.
On May 6, 1948, a person whose true name seems to be Azenor Dupuis but who impersonated Webster Daugat, a responsible citizen of Marksville, Louisiana, presented himself at the place of business of the plaintiff, Port Finance Company in Lake Charles, Louisiana, stating that he desired to purchase an automobile. A 1939 Chevrolet was selected and the price was agreed upon and Port Finance Co., Inc., delivered it to this person, believing that he was Webster Daugat. The car and a bill of sale showed the price to be $701.95. In payment for the car Dupuis gave toi the Finance Company a check which he signed with the name “Webster Daugat”. Du-puis drove the car to New Orleans and on the next day, May 7, 1948, sold it to John L. Ber who was engaged in business in New Orleans in operating a “Used-Car Lot” at which he bought and sold automobiles.
The sale to Ber was negotiated for $400, and in order to prove title to the car, Du-puis presented to Ber the bill of sale which showed that he had purchased it on the previous day for $701.95. A few days later the check, which had been given to Port Finance Co., Inc., in Lake Charles, was returned by the bank with a notation to the effect that the signature, “Webster Dau-gat”, had been forged.
It was discovered that the automobile had been sold to John L. Ber in New Orleans, and Port Finance Co., Inc., then brought suit against Ber praying that a writ of sequestration issue and that it be *184 declared owner of the car or, in the - alternative that the car could not be transferred to it, that it have judgment against Ber for $701.95. •
The automobile could not be located and therefore it was not sequestered. The district court rendered judgment dismissing plaintiff’s suit. On appeal, this court reversed the judgment and rendered a decree in favor of Port Finance Co-., Inc., recognizing it as the owner of the automobile and ordering that it be restored to the said Finance Company, or, in the alternative, that the car could not be found, that there be judgment in favor of the Finance Company and against Ber in the sum of $701.-95.
As soon as this decree became final, Port Finance Co-., Inc., called upon Ber, and Ber had no difficulty in finding the automobile and in delivering it. In the meantime, however, it had greatly depreciated in value and was finally sold for $60, that being the amount of the higher of two bids which had been obtained.
Thereupon this suit was filed by Port Finance Company against Ber, plaintiff praying for judgment for $641.95, which represented the difference between the value of the car when Ber received it and the $60 for which it had been sold in its depreciated condition.
Defendant filed exceptions of no right of action and no cause of action, a plea of res ad judicata, and a plea of prescription. These pleas and exceptions were overruled and there was judgment in favor of plaintiff and against defendant as prayed for. From this judgment defendant has appealed.
Necessarily we first consider the various exceptions and pleas on which-the defendant relics.
Counsel for defendant argues that the suit should be dismissed because of the prescription of one year which is applicable to claims for damages resulting from offenses or quasi-offenses. The theory on which this argument is based is that, since there was no contract of any kind between Port Finance Company and Ber, any claim which the former may have against the latter must result from an offense or a quasi-offense for which recovery is authorized by Article 2315 of our Civil Code, and that therefore the suit should have been brought within one year from the time at which the defendant secured possession of the automobile; that obviously when the first suit was filed on June 2, 1948, the plaintiff had knowledge of the facts on which this suit is based and- yet permitted more than one year to elapse between the discovery of those facts and the filing of this suit on September 20, 1950.
That argument fails completely to take into account the fact that, during most of that time, the first suit was pending and that so long as that suit was pending and had as its principal object the securing of the automobile, the present suit could not be brought. During all of- that time, the plaintiff was prevented from securing the automobile by the defendant who persistently denied that he had possession of it and made it absolutely impossible for plaintiff to discover that the condition of the car had deteriorated to such an extent that it had become practically worthless.
If it be assumed that the prescription of one year provided by Civil Code, article 2315 would otherwise have been applicable here, the doctrine “contra non valentem -agere non currit praescriptio” would protect the plaintiff in its right to (bring this suit when it did.- In Harvey v. Pflug, 37 La.Ann. 904, a similar plea of prescription was disposed of by the Supreme Court in the following language: “The plea of prescription may be disposed of at once. During the pendency of the litigation provoked by the defendant’s own acts, prescription did not run against the plaintiff. Even if the damages claimed are ex delicto less than a year elapsed, from the close of that, litigation to the beginning of this suit. A party cannot provoke and protract litigation based on his refusal to deliver leased premises and then avail himself of the lapse of time to avoid damages for his wrongful refusal. .If any one, under pretense of rights judicially determined to -have been unfounded, uses process of law to restrain another in the prosecution of his lawful claim, he cannot use the delay his own act *185 has caused to defeat the claim he' has wrongfully resisted. Boyle v. Mann, 4 [La.]Ann. 170; Stanbrough v. McCall, Ibid. 322; Martin v. Jennings, 10 [La.]Ann. 553.”
There is no doubt that this doctrine is firmly embedded in our jurisprudence at this time. As long ago as in the case of Rabel v. Pourciau, 20 La.Ann. 131, the doctrine was discussed but it was held that it was not applicable to the facts presented there, since after it became possible for the plaintiff to proceed, there remained sufficient time for the filing of the suit.
In McKnight v. Calhoun and Lane, 36 La.Ann. 408, the doctrine was recognized. See also McGuire v. Monroe Scrap-Material Co., 189 La. 573, 180 So. 413; Succession of Dancie, 191 La. 518, 186 So. 14 and Warn v. Mexican Petroleum Corporation, 6 La.App. 55.
The plea of res adjudicata is equally without sound foundation.. It is true that, in the first suit, the parties were the same as those now before us. But the cause of action which was asserted in that suit was substantially different from that which is the basis of this suit. There the plaintiff ■sought possession of an automobile which it claimed it owned and, if the automobile had been produced, that was all that the plaintiff could have claimed in that suit. The claim for the value of the car, which was made in that suit, was presented only in the alternative that the car could not be produced. When, at the termination of that part of the litigation, the oar was produced and it was discovered that it had ■deteriorated in value, the plaintiff then brought this suit for the loss resulting from this deterioration, claiming that it had been ■caused by the fault of defendant. In other words, the first suit was for the possession of the car and this suit is for the damage sustained by the car while it was in the possession of the defendant. Obviously the •cause of action asserted here is not the ■same as that which was asserted in the first suit. Consequently, we conclude that the plea of res adjudicata was properly overruled.
The exception of no cause of action is based on the theory that all that the plaintiff could have been entitled to .in any event was the car itself and that, since the car has been obtained, there is not left to plaintiff any part of its cause of action. This exception presents the real issue which is involved in this litigation.
Counsel argues that because of the effect of Article 280' of our Code of Practice, the defendant, in the. first suit, could have bonded the sequestration 'had* the car been found by the sheriff, and that if he had bonded it, his only obligation would have been to deliver the car at the termination of the litigation. In other words, that where a defendant in a sequestration proceeding furnishes a forthcoming bond and thus retains the possession of .the article sequestered, his only obligation is to return the property, which has been bonded, at the termination of the litigation, and that since, in the present situation, the defendant has surrendered the automobile into the custody of the sheriff, who in turn has turned it over to the plaintiff, there, is no cause of action remaining in the plaintiff.
This argument overlooks two things: First and foremost it overlooks the fact that the defendant did not avail 'himself of the right which possibly he would have had under Article 280 of the 'Code of Practice. He did not surrender the property or disclose its whereabouts and then bond it, but he chose instead to refuse to avail himself of the process provided by the law and to deliberately deny that the car was in his possession, and since he 'had unquestionably surreptitiously hidden the car so that it could not be discovered by the sheriff,, he made it impossible for the car to be seized under the writ of sequestration.
Counsel in his brief rather naively refers to the fact that the car was not found by the sheriff, saying “for some reason the automobile was never seized by the sheriff.” Obviously counsel for defendant is not so familiar with the facts as was the defendant himself for the defendant, as the record abundantly shows, could have advised him that the car was not seized because he deliberately and intentionally refused to deliver it or to disclose its whereabouts.
In the second place, the argument of counsel, that there is no liability because *186 the automobile could have been retained by the furnishing of a forthcoming bond and that then the only obligation would have been to surrender the car at the termination of the litigation, overlooks the fact that had the defendant bonded the car and retained possession of it in accordance with the right accorded him by the article of the Code of Practice, he would have been under the obligation not only of returning the automobile at the termination of the litigation but of not making any improper use of it, for that article provides that when the defendant bonds the sequestered property “he shall not send away the same out of the jurisdiction of the court; that he shall not make an improper use of them;

We have said that the defendant deliberately denied that he had possession of the car and refused to deliver it to the sheriff and we toase this statement on his own testimony which shows, without any possible doubt, that when the deputy sheriff served upon him the writ of sequestration, the deputy asked the defendant if he had the car in his possession. The defendant answered that the car was not on his lot. He permitted the sheriff to search his lot and to examine every car on it and then to‘ search his brother’s lot and at- no time told him what he later said, that during that time he had the car in the repair shop. He testified as follows:
“Q. Did you have the car in your possession when the interrogatories were filed on you in this matter? A. Sure.
“Q. And you now have possession of the car? A. I still have.
“Q. And you have always had possession of it? A. I have had possession of the car since I purchased the car.
“Q. Now, will you tell us what you have been doing with the car since you have had it? A. Well, when all this came up, I had to put it on the side and wait to see how it come out. That’s all I can say.”
In the case at bar he admitted that when the deputy sheriff called on him he refused to surrender the automobile.
“Q. Did you refuse to surrender said automobile? A. Yes.
“Q. During the period from May 17, 1948, to June, 1950, did you have the said automobile in your possession? A. I certainly did.”
Throughout this litigation the defendant has acted in the utmost bad faith. In our opinion in the first case, 45 So.2d 404, 406, 407, we found that the defendant had acted in bad faith in buying the car, saying: “we are impressed unfavorably with respect to defendant’s negotiations with Du-puis.”
The record leaves no room for doubt that, as a result of the treatment, or more properly of the mistreatment to which the car was subjected, its value was very substantially reduced and that, because of its deteriorated condition and also because of an enormous drop in the sale price of used cars, its value was no more than what was received for it when it was ultimately sold. We have no doubt at all that the defendant is liable for such depreciation as the car sustained as the result of his neglect to take proper care of it and as a result of his refusal to deliver it when the sheriff demanded possession of it.
Surely he cannot ¡be now heard to say that having refused to- surrender it and having permitted it to depreciate in value, the only obligation which the law places upon him is to deliver the car in its present condition. The Supreme Court, in Stout v. Haynes, 165 La. 680, 115 So. 823, 824, considered just such a situation as is'found here, except that there the defendant had actually availed itself of the right to retain possession of the sequestered property by furnishing a forthcoming bond. When judgment was finally rendered and the defendant was ordered to surrender the property to the plaintiff, it was found that it had been left “in the swamp, unprotected and unguarded, and exposed to all conditions of the weather and to the ravages of thieves.” It was contended that the only obligation of the defendant was to deliver the property in its then condition. The Supreme Court said: “The defendant surety is clearly liable for the difference between the value of the rig on the day it was bond-éd and its value on the day the plaintiff regained possession.”
*187 Stirely if there is liability where a defendant acts legally, there must also be liability where a defendant refused to- follow the legal process which is -available and takes the law into his own-hands as defendant did here.
A very similar situation is found in Mitchell v. Maxey, 11 La.App. 317, 123 So. 436, 437. There an automobile was sequestered and the defendant was permitted to retain possession on furnishing a forthcoming bond. When the defendant furnished the bond -and the truck was released to him, “he at once put it in a dry place where it was protected from sun and rain, and, in order to protect the casings and tubes, jacked the car up and put skids under the axles. The testimony further shows that from the day it was released to him it was never used by him or by any one else, but, on the contrary, remained where he placed it until after final judgment, when he took it out, carried it ¡back, and delivered it to plaintiff.”
The Court held that since he had not used the car and had not made improper use of it, he was not liable for the depreciation due to natural causes -and was not liable for the loss resulting from the drop in value of such automobiles. Quite possibly we would have been able to hold in the case at bar that, had the defendant acted as he was authorized to do by Article 280 of the Code of Practice, -and had he properly protected the car, he might have been relieved of liability for such loss as resulted from natural deterioration and drop in market value. But he did neither. Nor has he shown how much of the loss in value has resulted from the drop in the market price of used automobiles.
We have no doubt at all that we may take judicial notice of the decrease in the purchasing power of the dollar, and, as the Supreme Court said in the case of Mayerhefer v. Louisiana Coca-Cola Bottling Co., 219 La. 320, 52 So.2d 866, 869, “if this Court knows what everybody knows, then it knows that the value of the dollar has depreciated shockingly. See, also, Levy v. New Orleans & Northeastern R. Co., La.App., 20 So.2d 559. Nevertheless and although we note that in Reeves v. Clark, La.App., 18 So.2d 223, it was held that it was a matter of common knowledge that at that time the scarcity of new automobiles substantially increased the market value of used cars, -sti-11 we have grave doubt as to our right to take judicial notice of such a fact and to say that we know at this time, without proof, that the market value of used cars has substantially dropped. And we feel absolutely certain that we have no right to hold that any particular portion of the loss in value of this car was due to a natural drop in the market.
The defendant, had he availed himself of his right under the law, and had he then offered proof to show that the depreciated v-alue of the car resulted from a natural drop in the market, possibly he could have (been relieved of liability for some part of the loss, but he has done neither. By ignoring the law and attempting to take matters into his own hands, the defendant has become the author of his own misfortune and must bear the entire loss.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.